Filed 7/21/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

SCOTT GALEN,

      Plaintiff and Respondent,

v.

REDFIN CORPORATION,

      Defendant and Appellant.

A138642

(Alameda County
Super. Ct. No. RG13663672)

In this employment dispute, defendant Redfin Corporation appeals from the trial court's order denying its motion to compel arbitration of the claims asserted in plaintiff Scott Galen's class action lawsuit. The court concluded plaintiff's claims are based on alleged statutory violations and are therefore not encompassed by the parties' contractual agreement. Additionally, the court found that even if the claims fall within the agreement, the agreement's arbitration provision is unconscionable and therefore invalid. We now reverse.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Defendant provides residential real estate brokerage services for home buyers and sellers. The company is based in Seattle, Washington. Plaintiff lives in Danville, California.

On August 26, 2009, the parties entered into a "Field Agent Independent Contractor Agreement" (Agreement). The Agreement is approximately three and a half pages long, with two columns on each page. The document is a form contract drafted by defendant. Pursuant to the Agreement, defendant engaged plaintiff as a Contract Field Agent (CFA). The parties agreed that plaintiff, as a CFA, would "perform his/her duties

1

and services hereunder as an independent contractor." In this capacity, plaintiff was to "spend part of [his] work time doing work activities in the field and away from an office, including but not limited to taking prospective residential home buyers on home tours, providing access to properties for home inspections and appraisals, conducting open houses at homes that [were] for sale, as well as driving to and from various properties associated with these assignments throughout [his] assigned territor[y]." Either party could terminate the Agreement without cause with five days written notice. Additionally, plaintiff was required to bear certain costs, such as auto insurance and membership in a Multiple Listing Service (MLS).

On January 16, 2013, plaintiff filed the instant complaint on behalf of himself and other similarly situated individuals, alleging defendant improperly classified him and other CFA's as independent contractors when they were actually serving as employees under California law. Plaintiff alleged claims under the Labor Code and Unfair Competition Laws (UCL) for unpaid overtime, missed meal and rest periods, inaccurate and untimely wage statements, waiting time penalties, and unreimbursed business expenses.

On April 2, 2013, defendant filed a motion to compel arbitration. In its motion, defendant noted Paragraph 26 of the Agreement requires all disputes be submitted to mediation and binding arbitration. It also noted the Agreement provides that it is to be governed, construed, and enforced in accordance with the laws of the state of Washington.[1]

---

[1] As to choice of law, Paragraph 29 provides: "This agreement shall be governed by, construed and enforced in accordance with the internal laws of the state of Washington, without giving effect to principles and provisions thereof relating to conflict or choice of laws, and irrespective of the fact that any one of the parties is now or may become a resident of a different state. Venue for any action under this Agreement shall lie in King County, Washington."

Paragraph 26 provides, in part: "All disputes among the parties arising out of or related to this Agreement which have not been settled by mediation shall be resolved by binding arbitration within the State of Washington. . . . If the parties cannot agree upon an arbitrator within twenty (20) days from the date written demand for arbitration is served, the party demanding arbitration may commence an action for the limited purpose of obtaining appointment of an arbitrator by the . . . Superior Court of the State of Washington for King County. Any arbitration shall be conducted in accordance with the rules of the American Arbitration Association [AAA] then in effect, although the arbitration need not be conducted [by the AAA]. Any arbitration award may be enforced by judgment entered in the Superior Court of the State of Washington for King County."

On April 25, 2013, plaintiff filed his opposition to the motion to compel arbitration. He asserted that because his misclassification claims were extra-contractual and not otherwise dependent upon the existence of the Agreement, the arbitration clause did not apply and arbitration could not be compelled as a matter of law. He further asserted the clause was invalid due to the combined procedural and substantive unconscionability of its terms. He also argued that the Washington state choice-of-law provision did not apply to this dispute. In an accompanying declaration, he stated his belief that his right to redress was unduly burdened by the Agreement's requirement that he pay all of defendant's attorney fees if he loses at arbitration. He also asserted traveling to Washington state to attend an arbitration would impose an excessive financial burden.

On May 8, 2013, the trial court denied defendant's motion to compel arbitration. The court held the arbitration clause was governed by the Federal Arbitration Act (FAA). Faced with whether Washington or California state laws apply to construe the scope of the arbitration provision, the court resolved the issue under California law because the action was brought in California and the arbitration provision's choice-of-law clause expressly disclaimed the application of Washington "conflict or choice of laws" law. The

3

court also found that, under California law, the arbitration clause did not apply to plaintiff's statutory claims because those claims were based on statutes and not on the parties' contract. Alternatively, the Agreement was ruled unconscionable due to "unrebutted evidence of substantial procedural unconscionability," and "some (albeit less) substantive unconscionability." This appeal followed.

## DISCUSSION

### I. Standards of Review

California law favors enforcement of valid arbitration agreements. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 (*Armendariz*).) On petition by a party to an arbitration agreement, the trial court generally stays a pending action and orders the parties to arbitrate their dispute. (Code Civ. Proc., §§ 1281.2, 1281.4.) Appeal may be taken from an order denying a petition to compel arbitration. (Code Civ. Proc., § 1294, subd. (a).)

On appeal from the denial of a motion to compel arbitration, "[u]nconscionability findings are reviewed de novo if they are based on declarations that raise 'no meaningful factual disputes.' [Citation.] However, where an unconscionability determination 'is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence.' [Citation.]" (*Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144; *Armendariz, supra,* 24 Cal.4th 83 at p. 122.) In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration. (*Coast Plaza Doctors Hosp. v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686; see *Armendariz, supra,* at pp. 97-98.)

We review the trial court's choice-of-law determination de novo to the extent it presents a purely legal question, but review any underlying factual determinations for

4

substantial evidence. (*Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1539, fn. 4; see *Davies Machinery Co. v. Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 23-24.)

## II. *The Arbitration Agreement Encompasses Plaintiff's Claims*

We first address whether the trial court erred in concluding plaintiff's causes of action do not fall within the scope of the arbitration provision. Plaintiff contends his misclassification claims arise from the Labor Code and not from any terms set forth in the Agreement. He asserts the assessment of whether he and the purported class were misclassified "will turn on statutory factors set forth by California law and not any rights afforded by the Agreements." He further contends his employment status must be proven independent of the Agreement through other company documents or witness testimony. Defendant counters that the work for which plaintiff seeks compensation in this lawsuit was specifically described in, and performed as a result of, the Agreement. Additionally, the business expenses that he seeks reimbursement for were specifically referenced and assigned to the CFA's under the terms of the Agreement.

Paragraph 26 of the Agreement initially states: "In the event that any disputes arise *regarding the interpretation or enforcement* of this Agreement, such disputes shall be resolved as follows . . . ." (Italics added.) The paragraph goes on to discuss the use of good faith negotiations followed by mediation, if necessary. In the event mediation fails or is refused, the Agreement provides that all disputes "*arising out of or related to* this Agreement which have not been settled by mediation shall be resolved by binding arbitration within the State of Washington." (Italics added.) After noting that any ambiguity as to the scope of "related" claims should be construed against defendant, the trial court found the arbitration provision did not encompass plaintiff's claims because they "will be determined by applicable wage and hour law, regardless of the Agreement's terms." The court relied largely on *Narayan v. EGL, Inc.* (9th Cir. 2010) 616 F.3d 895, 899 (*Narayan*).

5

At the outset, we observe a decision of import that was not cited by either party in their briefs or at oral argument: *Perry v. Thomas* (1987) 482 U.S. 483 (*Perry*). There the Supreme Court addressed the application of California Labor Code section 229 (section 229) to a private arbitration agreement under the FAA. Section 229 states in relevant part: "Actions to enforce the provisions of this article [Labor Code sections 200-243 inclusive] for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate. . . ." The Supreme Court held in *Perry* that a suit alleging particular Labor Code violations in disregard of a private agreement to arbitrate the dispute where interstate commerce is involved would be preempted by the FAA. Congress's interest in protecting private arbitration agreements *preempts* any state interest in allowing litigants using state courts to enforce such violations. The FAA "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." (*Perry, supra,* 482 U.S. at 489; see also *THI of New Mexico at Hobbs Center, LLC v. Patton* (10th Cir. 2014) 741 F.3d 1162, 1166.) The holding in *Perry* was underscored by Justice Grimes in her dissent in *Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15 (*Elijahjuan*), 28-29, discussed below.

Several of plaintiff's causes of action specifically allege Labor Code violations that fall within the article that includes section 229. This would include the second (failure to provide meal periods), third (failure to provide rest periods), fourth (failure to pay earned wages upon discharge), and sixth (failure to furnish accurate itemized wage statements) causes of action, specifically, of the seven total causes of action. As to the fourth cause of action—failure to pay earned wages upon discharge (Lab. Code, §§ 201-203)—the trial court's holding is clearly erroneous under *Perry*. Under Labor Code section 229, "[a]n individual arbitration agreement . . . does not apply to an action to enforce statutes governing collection of unpaid wages, which 'may be maintained without regard to the existence of any private agreement to arbitrate. . . .' [Citation.] The intent

6

is to assure a judicial forum where there exists a dispute as to wages, notwithstanding the strong public policy favoring arbitration. [Citations.] *An exception to the general rule occurs when there is federal preemption by the FAA, as applied to contracts evidencing interstate commerce.* [Citation.]" (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1207 (*Hoover*), citing *Perry, supra,* 482 U.S. at p. 490, italics added.) Here, it is undisputed that the FAA applies to the Agreement. Accordingly, plaintiff's fourth cause of action is preempted by the FAA under *Perry*.[2] (See *Perry*, 482 U.S. at pp. 484, 490-491.)

In *Narayan,* the Ninth Circuit explained the distinction between rights arising under a contract and those arising under a California Labor Code statute. The issue in *Narayan* was whether a contractual choice-of-law provision requiring use of Texas law applied to alleged Labor Code violations. The appellate court explained that the alleged violations did not arise out of the contract, reasoning that the plaintiffs' claims for relief were dependent on whether they were employees (as opposed to independent contractors), which in turn was dependent "on the definition that the otherwise governing law—not the parties—gives to the term 'employee.' " (616 F.3d 895, 899.) The court further explained that although the contracts were relevant, the Labor Code claims did not arise out of them, stating: "While the contracts will likely be used as evidence to prove or disprove the statutory claims, the claims do not arise out of the contract, involve the interpretation of any contract terms, or otherwise require there to be a contract." (*Ibid*.)

---

[2] We note that, while the second, third, and sixth causes of action all fall within the range of statutes referenced in section 229, they are not, strictly speaking, provisions "for the collection of due and unpaid wages." (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 686; see also *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1256-1257 ["[A] section 226.7 claim is not an action brought for . . . nonpayment of wages; it is an action brought for nonprovision of meal or rest breaks"].) These claims do, however, implicate terms of compensation because additional pay can be the legal remedy for certain violations. (See, e.g., Lab. Code, § 226.7, subd. (c).) We need not consider here whether *Perry*'s holding should be extended to these three causes of action.

Here, *Narayan* is distinguishable in that it did not concern the issue of the enforceability of arbitration agreements.[3]

In the present case, the gravamen of plaintiff's complaint is that defendant misclassified him as an independent contractor. The Agreement is the instrument that classified him as such *and* that governed his relationship with defendant, including the services he was to provide and the method by which those services would be compensated. For example, plaintiff admits that his work included "taking prospective residential home buyers on home tours, providing access to properties for home inspections and appraisals, [and] conducting open houses at homes that are for sale." These are the very same services that he agreed to perform pursuant to his Agreement for specific compensation on a piece-rate basis. Further, to the extent he complains that defendant did not properly reimburse him for certain business expenses, including car insurance and MLS membership fees, the Agreement expressly assigned these expenses to him. Thus, his claims regarding his contractual employment status necessarily "arise out of" the Agreement.

Plaintiff asserts our courts "have consistently held" that actions challenging employer misclassification of employees as independent contractors "fall outside the scope of arbitration provisions contained in independent contractor agreements." He relies on *Elijahjuan, supra,* 210 Cal.App.4th 15, 21-24 and *Hoover, supra,* 206 Cal.App.4th 1193, 1209. To the extent these cases contradict our holding, we decline to follow them.

In *Elijahjuan,* the Second District Court of Appeal addressed an arbitration agreement that required arbitration for disputes regarding the "application or interpretation" of the agreement. (210 Cal.App.4th 15, 18.) It also limited the arbitrator's authority to issue an award in a way that excluded California substantive law.

---

[3] This court is not bound by decisions of the lower federal courts. (See *People v. Crittenden* (1994) 9 Cal.4th 83, 120, fn. 3; *People v. Bradley* (1969) 1 Cal.3d 80, 86.)

(*Id.* at pp. 22-23.) Concluding the plaintiff's wage and hour claims did not involve the application or interpretation of the agreement, and because the arbitrator did not have the authority to consider California substantive law, the majority held that the claims were not subject to arbitration. (*Id.* at pp. 23-24.)

The *Elijahjuan* majority opinion declared the lawsuit was not covered by the arbitration clause, stating: "Petitioners' lawsuit does not concern the application or interpretation of the Agreements, but instead seeks to enforce rights arising under the Labor Code benefitting employees but not independent contractors. No allegation in the [first amended complaint] is based on rights afforded petitioners under the terms of the Agreements. The parties' dispute therefore cannot be characterized as regarding the application or interpretation of the Agreements." (*Id.* at p. 21.) Reasoning that the legal inquiry for the misclassification claim would focus on "extracontractual" statutory factors, the court found that dispute "involve[d] neither the application nor the interpretation of the Agreements," but rather "involve[d] consideration of petitioners' actual work." (*Id.* at p. 22.) The court concluded that the parties' agreement "did not encompass any claims arising out of the contract, let alone any claims arising out of its application or interpretation. More importantly, the Labor Code claims do not arise out of the contract but instead are distinct from the rights under the Agreements. . . . In short, because the parties did not agree to arbitrate the dispute in this case, the order compelling arbitration must be reversed." (*Id.* at pp. 23-24.)

*Elijahjuan* is distinguishable on its facts. Here, the relevant arbitration clause applies to disputes "arising out of or related to" the Agreement. In *Elijahjuan*, the relevant clause applied only to disputes concerning the "*application or interpretation*" of the parties' agreement. Even if we accept plaintiff's more restrictive interpretation of Paragraph 26, namely, that it applies only to the "interpretation or enforcement" of the Agreement, the dispute here does relate to the enforcement of the Agreement in that

9

plaintiff is asserting in his complaint that the Agreement itself is *unenforceable* because it wrongfully designated him as an independent contractor.

We also find the dissenting opinion in *Elijahjuan* to be compelling. In her dissent, Justice Grimes stated: "Plaintiffs' claims challenge whether the agreements control the terms of their compensation, or whether the Labor Code applies. Such a dispute falls squarely within the language of the arbitration clause, which requires arbitration of all disputes 'with regard to [the] application or interpretation' of the parties' agreements." (*Elijahjuan, supra,* 210 Cal.App.4th 15, 25 (dis. opn. of Grimes, J.).) Justice Grimes first noted, "When an arbitration agreement is subject to the FAA, 'questions concerning the construction and scope of the arbitration clause are determined by federal law.' [Citation.]" (*Id*. at p. 26.) She criticized the majority opinion for giving the agreements a narrow interpretation and ignoring well-settled law requiring doubts about the applicability of an arbitration clause to be resolved in favor of arbitration (*id*. at p. 27), concluding the dispute fell within the arbitration clause because, "[r]esolution of plaintiffs' claims requires a determination whether the agreements apply to set the terms of plaintiffs' compensation, or whether the Labor Code controls." (*Id.* at p. 28.) We concur with the dissent's view that the majority opinion (and the trial court's ruling in the present case) "amounts to a judicial rule barring arbitration of wage and hour claims under the Labor Code in any contract that purports to have been made with an independent contractor, even a contract affecting interstate commerce," in contravention of the principles stated in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 321. "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."[4] (*Elijahjuan,* at p. 28.)

_____

[4] In *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 321, the United States Supreme Court examined the validity of the rule of *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 (*Discover Bank*) after a federal district court relied on *Discover Bank* to

*Hoover v. American Income Life Ins. Co.*, *supra*, 206 Cal.App.4th 1193, also cited by the trial court, is not on point. *Hoover* involved an insurance sales agent's claims of independent contractor misclassification. The parties entered into a contract with an arbitration clause, which required arbitration "[i]n the event of any dispute or disagreement arising out of or relating to this contract." (*Hoover,* at p. 1199.) In refusing to enforce the arbitration agreement, the appellate court held the defendant implicitly waived its right to arbitrate because, prior to moving to compel arbitration, it had caused considerable delay, conducted litigation in a style inconsistent with the right to arbitrate, and availed itself of mechanisms not available at arbitration, such as depositions. (*Id.* at p. 1204.) The court also stated, in dicta, that California law applied to the agreement, not the FAA, and therefore Labor Code section 229 was not preempted. (*Id.* at pp. 1207-1208.) The *Hoover* court itself expressly acknowledged the FAA preempts the rule that statutory claims are not subject to private arbitration agreements when the arbitration agreement is in a contract involving interstate commerce. (*Id.* at p. 1207.) Again, in our case it is undisputed that the FAA applies.

We note *Hoover* was recently criticized in *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676 (*Lane*). In *Lane,* a former employee brought an action against the employer for various employment-related claims, including claims for statutory violations of the Labor Code. (*Id.* at p. 680.) The employer moved to compel arbitration. (*Id.* at p. 681.) The plaintiff opposed the motion, relying on *Hoover* for the proposition that his statutory Labor Code claims were not subject to arbitration because the arbitration agreement failed to specify the Labor Code provisions at issue. (*Id.* at pp.

conclude that an arbitration agreement was unconscionable because the defendant had not demonstrated that bilateral arbitration could adequately substitute for the deterrent effects of class actions in that case. The precise issue before the court in *Concepcion* was whether the FAA prohibited a state rule, such as the one articulated by *Discover Bank,* that conditioned "the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures." (*Concepcion, supra,* at p. 325.)

11

681-682.)  In rejecting the plaintiff's position, the Second District Court of Appeal found *Hoover* "overly broad" to the extent it suggests state statutory wage and hour claims are categorically exempt from arbitration.  (*Id.* at p. 686.)  Instead, the *Lane* court explained "the plain language of [Labor Code] section 229 is limited to actions for the collection of due and unpaid wages brought under sections 200 through 244; section 229 does not apply to *all* statutory wage and hour claims."  (*Ibid.*, emphasis in original.)  The court further observed, "*Hoover's* broad presumption against the arbitration of statutory labor claims conflicts with *Armendariz.*"  (*Ibid.*)

Plaintiff also relies on *Quinonez v. Empire Today, LLC* (N.D. Cal. Nov. 4, 2010) 2010 WL 4569873, at *2-3.  In that case, the district court denied a motion to compel arbitration in an independent contractor misclassification action where the clause required arbitration of "any and all disputes, claims or controversies . . . arising under or relating to this Agreement" (*Id.* at *6) because "[t]he claims brought by plaintiff do not arise under the contract between the parties but from the California Labor Code."  (*Id.* at *6.)  Again, for the reasons stated above, we do not find this holding persuasive.[5]

### III. Conflict of Law

We turn to the conflict-of-law issue presented by the Agreement.  Defendant asserts the enforceability of the arbitration clause is governed by the law of Washington state, not California, pursuant to the Agreement's choice-of-law provision that says, "[t]his Agreement shall be governed by, construed and enforced in accordance with the internal laws of the state of Washington, *without giving effect to principles and provisions thereof relating to conflict or choice of laws . . . .*"  (Italics added.)  Defendant

---

[5] Plaintiff makes much of whether the arbitration Agreement can be construed to cover disputes "related to" the agreement, as opposed to disputes that merely " 'arise regarding the interpretation or enforcement of this Agreement.' "  Our conclusions regarding the application of the arbitration clause to this dispute are the same under either construction.

12

claims the trial court erred when it declined to enforce this clause and applied California law instead of Washington law to plaintiff's contract defense of unconscionability.

Under California law, there is a strong policy favoring the enforcement of choice-of-law provisions. (*Nedlloyd Line B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464-465.) Plaintiff contends, and the court below agreed, that California law applies to the conflict issue because the clause in question "expressly disclaim[s] the application of Washington's conflict or choice of laws—leaving the applicable conflict of laws undecided." Defendant asserts the Agreement's conflict-of-laws reference actually means that Washington law applies notwithstanding Washington's choice-of-law principles. In our view, the provision is somewhat ambiguous. Regardless, because defendant limits its argument to the issue of which state's laws apply to plaintiff's contractual defenses to the arbitration agreement we need not decide this issue.[6] As we discuss below, we conclude that even under California law, plaintiff's unconscionability claim lacks merit.

## IV. The Agreement Is Not Unconscionable

### A. The Doctrine of Unconscionability

Civil Code section 1670.5, subdivision (a) states: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." This provision applies to arbitration agreements. (*Armendariz, supra,* 24 Cal.4th at p. 114.)

" '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results. [Citation.] 'The prevailing view is

---

[6] Defendant suggests "under California law, the standard for unconscionability is more liberal than the standard under Washington law."

that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at p. 114, emphasis in original.) In the present case, the trial court found the Agreement was unconscionable due to "unrebutted evidence of substantial procedural unconscionability," and "some (albeit less) substantive unconscionability."

### B. *Procedural Unconscionability*

"The procedural element of an unconscionable contract generally takes the form of a contract of adhesion . . . ." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071.) An adhesive contract is defined as " 'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.]" (*Armendariz, supra,* 24 Cal.4th at p. 113.) It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability. (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704 (*Serpa*).) Assuming the Agreement here is adhesive in character, "this adhesive aspect of an agreement is not dispositive." (*Ibid.*) Courts have observed that "[w]hen, as here, there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.' [Citations.]" (*Ibid.*)

In finding the Agreement procedurally unconscionable, the trial court found that, in addition to the adhesive quality of the contract, there was "indicia of oppression, in that the rules governing arbitration were not provided . . . ." Additionally, the court

14

concluded the reference in the contract to the " 'rules of the American Arbitration Association then in effect' " did not clearly identify the rules because a declaration submitted by plaintiff suggested the AAA has more than one set of potentially applicable rules. Finally, the court found "some evidence of surprise" in that defendant "did not call out the arbitration provision, explain its implications, or ask Plaintiff to acknowledge receipt." We conclude these factors do not amount to "substantial" procedural unconscionability.

In *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, we addressed a similar set of contract provisions. We first noted that the use of a nonnegotiable contract, standing alone, is insufficient to support a finding of procedural unconscionability. (*Id.* at p. 1470.) We also held the failure to attach the rules of an adjudicating body contributes to surprise only if the rules are found to contain unexpected provisions that limit the scope of the plaintiff's claims or otherwise affect the relief available. (*Peng, supra,* 219 Cal.App.4th at pp. 1471-1472.) Plaintiff here points to no such limits in the AAA rules.[7] In concluding the failure to attach a copy of the AAA rules did not render an arbitration agreement procedurally unconscionable, the appellate court in *Lane* observed: "There could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties—the AAA rules are available on the Internet. [Citation.]." (*Lane, supra,* 224 Cal.App.4th at p. 691.) That the Agreement does not specify the exact set of AAA rules that would be used is of minor significance as there is no reason to assume the parties would not use the rules applicable to the subject matter involved in their dispute.

Further, apart from the adhesive nature of the contract, the record is bereft of evidence of surprise or oppression due to unequal bargaining power, which is the focus of procedural unconscionability. In support of his claim of oppression, plaintiff states in a

---

[7] Defendant's request for judicial notice of the AAA rules (filed on September 27, 2013) is granted.

15

declaration that he was told that the sooner he returned the executed Agreement, the sooner he could begin working and earning money. This relatively common-sense notion does not suggest defendant applied any undue pressure. While plaintiff might personally have felt pressured to sign the Agreement in order to begin earning money, there is no evidence that defendant required him to sign the document in an unreasonably short period of time. For example, defendant did not state that it would withdraw its offer if plaintiff did not return the signed contract immediately.

Additionally, while the arbitration provision is not highlighted in all capital letters or otherwise set out from the Agreement, it is not hidden in the fine print of a prolix agreement. The dispute resolution portion of the contract takes up a full half-page of the three and a half page document. In short, on the issue of procedural unconscionability, all the evidence shows here is a relatively short agreement that plaintiff, presumably a well-educated individual fluent in English and, as a real estate professional, familiar with contracts, had full opportunity to review. In sum, the factors relied on by the trial court and argued here by plaintiff are not suffice to establish procedural unconscionablity. (See *O'Donoghue v. Superior Court* (2013) 219 Cal.App.4th 245, 258-261 [likely not "any" procedural unconscionability without surprise or oppression]; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1470-1471 ["whatever" procedural unconscionably inherent in an arbitration clause in seven-page adhesive employment agreement was limited at best].)

### C. Substantive Unconscionability

Assuming some degree of procedural unconscionability, we turn to whether the arbitration provision is substantively unconscionable. In analyzing substantive unconscionability, "[s]ome courts have imposed a higher standard [than merely one-sided or overly harsh]: the terms must be ' "so one-sided as to *shock the conscience*." [Citation.]' [Citation.] Where a party with superior bargaining power has imposed contractual terms on another, courts must carefully assess claims that one or more of

16

these provisions are one-sided and unreasonable." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88, italics in original.)  " 'When, as here, . . . "the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high." [Citations.]' [Citation.]" (*Peng, supra,* 219 Cal.App.4th at p. 1470.)

### 1. *Attorney Fees and Costs*

The attorney fee provision in the Agreement provides: "If any party hereto shall bring a suit, arbitration or take other action against the other for relief, declaratory or otherwise, arising out of this Agreement, the prevailing party shall have and recover reasonable attorney fees, in addition to all costs and disbursements, against the other party, whether or not a lawsuit shall be involved."  The trial court found "some" evidence that the Agreement is substantively unconscionable because it could impose costs on plaintiff.  The court noted rules for arbitration contemplate fees for arbitrators, administrative costs, and room rental, among others.  Further, plaintiff could be liable for defendants fees and costs in the event of a loss in arbitration.  Defendant argued below that the AAA rules required the employer to pay *all* costs of arbitration.  Additionally, fee- and cost-shifting awards are permissive and are to be awarded consistent with applicable law under these rules.  Nevertheless, the court found the possibility of a fee-shifting award created "a significant deterrent to proceeding with this action."

We observe the attorney fee and cost provision, on its face, is mutual and is not one-sided.  An arbitration clause that unduly burdens or deters a plaintiff's pursuit of claims by imposing costs greater than the usual costs incurred during litigation is not permissible.  (*Armendariz, supra,* 24 Cal.4th at pp. 110-111.)  It is settled that "substantive unconscionability focuses on the one-sidedness of the contract terms.  In the context of an arbitration agreement, the agreement is unconscionable unless there is a

17

' "modicum of bilaterality" ' in the arbitration remedy. [Citations.]" (*Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 854.) [8]

It is true that a plaintiff employee is not responsible for the employer's attorney fees if the employer prevails on an employee's overtime claim. (Lab. Code, § 1194, subd. (a); *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1429.) Nevertheless, we cannot conclude that a mutual attorney fee provision "shocks the conscience" simply because it fails to contemplate that there are some Labor Code claims that do not allow a prevailing employer to recover attorney's fees from an employee. Further, as the Agreement specifically provides that the arbitration proceeding will be governed by the AAA rules, we have no reason to assume attorney fees and costs will not be apportioned in accordance with the principles cited by defendant.

### 2. Forum Selection

Plaintiff also claims that traveling to Washington state to attend an arbitration would be a financial burden due to travel expenses and the loss of a day's pay for each day spent in arbitration. We note contractual forum-selection clauses are usually enforced in California regardless of the inherent additional expense and inconvenience of litigating claims in a distant forum, unless the party challenging enforcement of the clause can show it is unreasonable. (*Smith, Valentino & Smith, Inc. v. Superior Court*

---

[8] See, e.g., *Armendariz,* at pp. 110-111 ["[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court"]; *Serpa, supra,* 215 Cal.App.4th 695, 709-710 [finding arbitration agreement unconscionable because it deprived employee of a favorable fee-shifting rule under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.)]; *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 800 [finding arbitration agreement unconscionable because it "arguably strips [the employee] of her right to recover attorney fees under her California statutory claims" and "imposes on her the obligation to pay [the employer's] attorney fees where she would have no such obligation under at least one of her California statutory claims"]).

(1976) 17 Cal.3d 491, 495-496 (*Smith*).) *Smith* expressly applied this rule to an agreement where, in a commercial context, a plaintiff "freely and voluntarily negotiated away his right to a California forum." (*Id.* at p. 495.) The same rule has been applied to mandatory forum-selection clauses where employment discrimination claims are presented, so long as the plaintiff has an adequate remedy in the selected forum. (*Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1305 (*Olinick*).) For example, in *Olinick,* the appellate court rejected a claim that California's public policy against age discrimination would be violated by a contractual requirement for litigation in New York, where there was no showing that the selected forum would not provide an adequate remedy for his claim. (*Id.* at pp. 1303, 1305.)

In cases with a contractual forum-selection clause, the burden of proof is on the party resisting the forum. (*Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 198.) The party's burden is "to demonstrate that the contractually selected forum would be unavailable or unable to accomplish substantial justice or that no rational basis exists for the choice of forum. [Citations.] Neither inconvenience nor the additional expense of litigating in the selected forum is a factor to be considered. [Citations.] However, a forum selection clause will not be enforced if to do so would bring about a result contrary to the public policy of this state. [Citations.]" (*Id.* at pp. 199-200; see also *Olinick, supra,* 138 Cal.App.4th at p. 1294 [" ' " '[m]ere inconvenience or additional expense is not the test of unreasonableness . . .' " of a mandatory forum selection clause' "].)

In *Aral v. Earthlink, Inc.,* the court reviewed the development of case law on the enforceability of forum-selection clauses after *Smith, supra,* 17 Cal.3d 491, and questioned application of the rationale underlying the *Smith* rule to contracts of adhesion. (*Aral v. Earthlink, Inc.* (2005) 134 Cal.App.4th 544, 558-562 (*Aral*).) *Aral,* however, involved California consumers who each incurred only about $50 in damages and who would have been required to litigate their claims in Georgia under the forum selection

clause and on an individual basis (due to a class action waiver). (*Id.* at p. 561.) The court there recognized that both California Supreme Court and the United States Supreme Court place "a heavy burden on the plaintiff who seeks to prove that a forum selection clause is unreasonable, particularly where the alleged unreasonableness is based on the additional expense and inconvenience of litigating far from home, the burden was not intended to be insurmountable." (*Ibid*.) The *Aral* court found that, under the facts of that case, trial in the contractual forum would be so " 'gravely difficult and inconvenient' " that a plaintiff would " 'for all practical purposes be deprived of his day in court.' " (*Ibid.,* citing *The Bremen v. Zapata Off-Shore Co*. (1972) 407 U.S. 1, 18.) Therefore, "[t]o expect any or all of them to travel to Georgia in order to obtain redress on a case-by-case basis, whether in a courthouse or in an arbitration hearing room, is unreasonable as a matter of law." (*Aral,* at p. 561.) No such facts are presented here.

Significantly, plaintiff has not shown that the forum-selection clause is so one-sided as to "shock the conscience," or that it imposes harsh or oppressive terms. This argument was foreclosed by our Supreme Court's holding in *Smith,* that " '[m]ere inconvenience or additional expense is not the test of unreasonableness.' " (*Smith, supra,* 17 Cal.3d 431, 496; accord, *Intershop, supra,* 104 Cal.App.4th 191, 199, 201-202 ["A forum selection clause within an adhesion contract will be enforced 'as long as the clause provided adequate notice to the [party] that he was agreeing to the jurisdiction cited in the contract.' [Citations.]"; *CQL Original Products, Inc. v. National Hockey League Players' Assn.* (1995) 39 Cal.App.4th 1347, 1354, 1358-1359 [enforcing forum-selection clause requiring parties to settle disputes in Ontario, Canada].)[9] In sum, we conclude the

[9] Plaintiff's reliance on *Bolter v. Superior Court* (2001) 87 Cal.App.4th 900 (*Bolter*) and *Nagrampa v. MailCoups, Inc*. (9th Cir. 2006) 469 F.3d 1257 is misplaced. Those cases did not address *Smith*. *Bolter* is further distinguishable on the ground that the forum selection clause requiring any arbitration to be conducted in Utah was imposed upon *preexisting* California franchisees. As the *Bolter* court noted, "[w]hen petitioners first purchased their . . . franchises in the early 1980's, [the franchisor] was headquartered in California, and the franchise agreement did not contain an arbitration provision. Thus,

arbitration clause is not substantively unconscionable.  Accordingly, the arbitration agreement is not unconscionable and the trial court erred in concluding the provision is unenforceable.

**DISPOSITION**

The order is reversed.

_____
Dondero, J.

We concur:

_____
Margulies, Acting P.J.

_____
Becton, J.[*]

---

they never anticipated [the franchisor] would relocate its headquarters to Utah and mandate that all disputes be litigated there." (*Bolter, supra,* 87 Cal.App.4th at p. 909.)  In contrast, here plaintiff was provided notice before he was employed that all employment-related disputes would be litigated in Washington.

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                                                  Alameda County Superior Court


Trial Judge:                                                 Hon. Steven A. Brick


Counsel for Defendant and Appellant:          Ronald D. Arena,
                                                             Michael Hoffman, and
                                                             Christopher D. Baker
                                                                of Arena Hoffman LLP


Counsel for Plaintiff and Respondent:           Laura L. Ho, and
                                                             James Kan
                                                                of Goldstein, Borgen, Dardarian & Ho