Filed 10/2/13 (unmodified version attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANNA PENG,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>FIRST REPUBLIC BANK,<br><br>     Defendant and Appellant. | A135503<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-11-516927)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed herein on August 29, 2013, be modified as follows:

1.  On page 3, footnote 1, delete the last sentence of the footnote beginning "In *Sanchez*, the Supreme Court stated" and the subsequent citation.

There is no change in the judgment.

Dated:

_____
Dondero, J.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANNA PENG,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>FIRST REPUBLIC BANK,<br><br>     Defendant and Appellant. | A135503<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-11-516927) |

Plaintiff Anna Peng sued her employer, defendant First Republic Bank, for employment discrimination, intentional infliction of emotional distress, and wrongful termination. The trial court denied defendant's motion to compel arbitration, finding the parties' arbitration agreement to be fatally unconscionable. The court rejected defendant's argument that the unconscionable provisions, if any, were severable. We conclude the agreement is not unconscionable and now reverse.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff began working for defendant as an assistant manager in September 2005. In 2007, defendant became a wholly owned subsidiary of Merrill Lynch & Co., Inc. In January 2009, Bank of America purchased Merrill Lynch and subsequently sold defendant to private investors. Defendant emerged as an independent bank on July 1, 2010.

On March 26, 2010, defendant made a written offer to plaintiff for employment as an assistant manager with the newly chartered bank. The offer was subject to plaintiff's

agreement to be bound by a number of employment conditions and policies, including defendant's arbitration agreement. The offer stated that it was valid for 25 days.

The offer enclosed a single page with the words "ARBITRATION AGREEMENT" (Agreement) appearing in bold, capital letters at the top. The Agreement provides, in part: "The undersigned Employee, [plaintiff], Assistant Manager, and [defendant] agree that any claims either party has arising out of or relating to the Employee's employment shall be resolved by final and binding arbitration. Arbitration shall apply to any and all common law or statutory claims, with the exception of any claims that the Employee may have for workers' compensation benefits or unemployment compensation benefits."

Although she had 25 days to consider the offer, plaintiff accepted it after four days and signed the Agreement on March 30, 2010. She did not object or express any reluctance to signing the Agreement at the time it was presented to her. Nor did she express any concerns about the Agreement at any time during her employment.

Defendant terminated plaintiff's employment on May 23, 2011, for reasons that are not material to the issues on appeal.

On December 28, 2011, plaintiff filed a complaint alleging claims against defendant for race and gender discrimination, equal pay/compensation discrimination, hostile work environment, retaliation, intentional infliction of emotional distress, and wrongful termination in violation of public policy.

On February 2, 2012, defendant moved to compel arbitration, contending plaintiff had agreed to arbitrate all claims arising out of her employment. The motion was based on the language of the Agreement quoted above.

Plaintiff opposed the motion to compel arbitration, asserting the Agreement was unconscionable because she had had no meaningful opportunity to negotiate the Agreement's terms, and because the Agreement unfairly gave defendant the unilateral authority to modify or terminate it without notice.

2

On April 2, 2012, the trial court filed its order denying defendant's motion to compel arbitration, concluding the Agreement was "permeated" by unconscionability. Citing to the then-recent case of *Mayers v. Volt Management Corp.* (2012) 203 Cal.App.4th 1194 (*Mayers*),[1] the court found the Agreement was both procedurally and substantively unconscionable because it required plaintiff to abide by a set of arbitration rules that were not provided to her, "much less identified with any clarity." Additionally, the provision in the Agreement affording defendant the unilateral authority to modify or terminate the terms of the Agreement was substantively unconscionable. Finding the offending nature of the Agreement was incurable by severance, the court concluded the agreement was both unconscionable and unenforceable. This appeal followed.[2]

## DISCUSSION

### I. *The Statutory Scheme and the Standards of Review*

"Title 9 of the Code of Civil Procedure . . . represents a comprehensive statutory scheme regulating private arbitration in this state.[3] (§ 1280 et seq.)"[4] (*Moncharsh v.*

---

[1] On June 13, 2012, the California Supreme Court granted review in *Mayers v. Volt Management Corp.,* No. S200709, pending consideration and disposition of a related issue in *Sanchez (Gil) v. Valencia Holding Company,* No. S199119 (review granted Mar. 21, 2012) (*Sanchez*). In *Sanchez,* the Supreme Court stated that the issue presented is whether the Federal Arbitration Act (FAA) (9 U.S.C. §§ 1, 2) "preempt[s] state law rules invalidating mandatory arbitration provisions in a consumer contract as procedurally and substantively unconscionable?" (Supreme Ct. Mins., Mar. 21, 2012.)

[2] Defendant also has appealed an order denying its motion to compel arbitration, based on the same arbitration agreement, in *Edwards v. First Republic Bank,* No. A135505. We denied defendant's application to consolidate the appeals.

[3] Defendant notes that it based its motion to compel on the FAA, but did not explicitly argue that the FAA preempted the state law that the trial court applied. We observe that on the question presented in this case—whether the agreement is revocable as unconscionable—the FAA and the California Arbitration Act are, for all practical purposes, identical. (See 9 U.S.C. § 2; Code Civ. Proc., § 1281.) In light of our conclusions in the instant case, we find it unnecessary to consider whether the FAA preempts any aspect of the unconscionability doctrine as applied to arbitration agreements under state law.

3

*Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).) "The fundamental premise of the scheme is that '[a] written agreement to submit [either a present or a future controversy] to arbitration . . . is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' ([§] 1281.)" (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 830, fn. omitted.)

"Through this detailed statutory scheme, the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.] Consequently, courts will ' "indulge in every intendment to give effect to such proceedings." ' [Citation.]" (*Moncharsh, supra,* 3 Cal.4th at p. 9.) Nevertheless, the public policy is not absolute. " '[T]he policy favoring arbitration cannot displace the necessity for a voluntary agreement to arbitrate.' [Citations.]" (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 739; accord *Mission Viejo Emergency Medical Associates v. Beta Healthcare Group* (2011) 197 Cal.App.4th 1146, 1153.)

Section 1281.2 provides for trial court enforcement of private arbitration agreements: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] . . . [¶] . . . Grounds exist for the revocation of the agreement." (§ 1281.2, subd. (b).) In the trial court, the party seeking arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence, and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense, such as unconscionability. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) In the summary

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

proceedings under section 1281.2, "the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla,* at p. 972.)

The standard of review where the trial court resolved disputed facts in ruling on a motion to compel arbitration is substantial evidence. (*Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 953.) In cases such as this one in which the facts were undisputed, the standard of review is de novo. (*Ibid.; Pinnacle, supra,* 55 Cal.4th at p. 236.) If only a question of law is involved, the standard of review is also de novo. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.) We review a court's decision not to sever an unconscionable provision for abuse of discretion. (See *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 124 (*Armendariz*).)

## II. *Doctrine of Unconscionability*

Civil Code section 1670.5, subdivision (a) states: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." This provision applies to arbitration agreements. (*Armendariz, supra,* 24 Cal.4th at p. 114.)

" '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at p. 114.)

5

"The procedural element of an unconscionable contract generally takes the form of a contract of adhesion." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 (*Little*).) An adhesive contract is defined as " 'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.]" (*Armendariz, supra,* 24 Cal.4th at p. 113.) As to substantive unconscionability, "[s]ome courts have imposed a higher standard [than merely one-sided or overly harsh]: the terms must be ' "so one-sided as to *shock the conscience*." [Citation.]' [Citation.] Where a party with superior bargaining power has imposed contractual terms on another, courts must carefully assess claims that one or more of these provisions are one-sided and unreasonable." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88 (*Gutierrez*).)

## III. *The Trial Court Erred in Concluding the Agreement is Unconscionable*

### A. *Procedural Unconscionability*

Preliminarily, we note that under *Armendariz,* compulsory arbitration of statutory discrimination claims under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) is permissible so long as the arbitration agreement: " '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.' " (*Armendariz, supra,* 24 Cal.4th at p. 102.) Plaintiff has not asserted that the Agreement fails to meet the *Armendariz* requirements. Instead, the trial court here concluded the Agreement is per se procedurally unconscionable because it contains a provision that requires plaintiff to abide by the rules of the American Arbitration Association (AAA) (or such alternative dispute resolution service as agreed upon by the parties), but does not include a set of these rules or identify them "with any clarity."[5]

---

[5] We note the AAA rules are available on the Internet at <http://www.adr.org/aaa/faces/rules> (as of Aug. ___, 2013).

6

"It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704 (*Serpa*).) Assuming the Agreement here is adhesive in character, "this adhesive aspect of an agreement is not dispositive." (*Ibid.*) Courts have observed that "[w]hen, as here, there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.' [Citations.]" (*Ibid.*, fn. omitted.)

In finding the Agreement procedurally unconscionable, the trial court relied primarily on *Mayers,* a case that has since been depublished as a result of the Supreme Court's grant of review. Notwithstanding this development, plaintiff asserts the court's decision is supported by the weight of California authority. Defendant counters that numerous California cases have considered arbitration agreements that incorporate, but do not attach, the applicable arbitration rules without suggesting that such provisions are improper. (*Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1281–1282; *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1126–1127; *Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1318.) Defendant also points to several federal district court decisions that have concluded the incorporation of the AAA's rules by reference does not render an agreement to arbitrate procedurally unconscionable, regardless of whether a copy of the rules is provided.[6]

Plaintiff initially relies on *Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 485–486. In *Zullo,* the Sixth District Court of Appeal, for a variety of reasons, found an arbitration agreement to be procedurally unconscionable as a contract of adhesion. The court also stated: "The absence of the AAA . . . arbitration rules adds *a bit* to the procedural unconscionability." (*Id.* at p. 485, italics added.) As defendant notes, in a recent case out of this same appellate district involving an arbitration provision in a

---

[6] See, e.g.*, Lucas v. Gund, Inc.* (C.D.Cal. 2006) 450 F.Supp.2d 1125, 1131.

private school enrollment agreement, the appellate court concurred with the trial court's assessment as to the lack of significance to be ascribed to a failure to provide a copy of the AAA rules with respect to a claim of procedural unconscionability: "We agree that the absence of the AAA rules is of minor significance to our analysis." (*Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 737.)

The other cases plaintiff relies on are also unpersuasive. In *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1405, the appellate court found the element of surprise where an arbitration agreement referenced the Better Business Bureau arbitration rules but did not attach them to the contract. Those rules precluded the consumer from obtaining damages. (*Ibid*.) The surprise element was manifest: "Here is the surprise: The customer must inevitably receive a nasty shock when he or she discovers that *no relief is available* even if out and out fraud has been perpetrated, or even if he or she merely wants to be fully compensated for damaged property." (*Id.* at p. 1406, italics added.) As to oppression: "Here is the oppression: The inability to receive full relief is artfully hidden by merely referencing the Better Business Bureau arbitration rules, and not attaching those rules to the contract for the customer to review. The customer is forced to go to another source to find out the full import of what he or she is about to sign—and must go to that effort *prior* to signing." (*Ibid*.) Importantly, the court noted that the arbitration rules of the Better Business Bureau "are not just *procedural* ones . . . . By limiting the *scope* of arbitral claims, the Better Business Bureau rules have the effect of *substantively* limiting the defendant's exposure." (*Id.* at p. 1407.) In the present case, plaintiff does not allege that the AAA rules have any corresponding substantive impact on her employment-related claims.

On the other hand, in *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393, Division Four of our District concluded that an employer's failure to provide a copy of the AAA arbitration rules supported a finding of procedural unconscionability where the employment agreement was prepared by the employer, and the arbitration provision was a mandatory part of that agreement. However, the agreement was also

8

deemed to be substantively unconscionable because it was contrary to the FEHA in its attorney fees and cost recovery provision, and placed the employee at greater risk than if he brought his FEHA claims in court. (*Trivedi*, at pp. 394–395.) The instant Agreement does not include a similarly unlawful provision. Thus, while arguably supporting plaintiff's position, *Trivedi* is not entirely on point.

The other cases plaintiff relies on are even less persuasive. In *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, the arbitration agreement contained provisions limiting discovery. The appellate court concluded the agreement was inconsistent with *Armendariz* as the defendant had "deliberately replaced the AAA's discovery provision with a more restrictive one, and in so doing failed to ensure that employees are entitled to discovery sufficient to adequately arbitrate their claims." (*Fitz,* at p. 721.) The court also noted that because the AAA rules were not attached, the other party would be required "to go to another source in order to learn the full ramifications of the arbitration agreement." (*Ibid.*) Thus, the case did not hold that failure to attach the relevant arbitration rules rendered the agreement procedurally unconscionable.

*Gutierrez* is also distinguishable. In that case, the arbitration clause was essentially hidden, printed in eight-point typeface on the opposite side of the signature page of a lease. The plaintiff was never informed that the lease contained an arbitration clause, much less offered an opportunity to negotiate its inclusion within the lease or to agree upon its specific terms. He was not required to initial the arbitration clause. Under these circumstances, the arbitration clause was deemed procedurally unconscionable. (*Gutierrez, supra,* 114 Cal.App.4th at p. 89.) Here, plaintiff does not allege that the arbitration provisions were hidden. Similarly, in *Patterson v. ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659, 1665–1666, the failure to include the applicable arbitration rules was deemed relevant primarily because they created ambiguity as to the state in which any arbitration proceeding would be held and contained an " 'incomprehensible' " fee waiver process.

Plaintiff does not argue that there are any other provisions in the Agreement that would support a finding of procedural unconscionability. Nor does she identify any feature of the AAA rules that prevent fair and full arbitration. Thus, we find the failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability.

**B.** *Substantive Unconscionability*

Substantive unconscionability "may take various forms," but typically is found in the employment context when the arbitration agreement is "one-sided" in favor of the employer without sufficient justification, for example, when "the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration." (*Little, supra,* 29 Cal.4th at pp. 1071–1072; see *Armendariz, supra,* 24 Cal.4th at p. 117 ["it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities' "].) We conclude the Agreement's unilateral modification provision is not substantively unconscionable.

In *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199 (*24 Hour Fitness*), an employee sued her employer for sexual harassment. The employer sought summary judgment on the ground the employee had agreed to arbitrate her claims against the employer. The appellate court concluded the arbitration agreement was valid, rejecting the employee's claims the agreement was unconscionable, illusory, and lacking in mutuality. (*Id.* at p. 1204.) The employee had signed an acknowledgement that she had received and read the personnel handbook, which stated: " 'I . . . agree that if there is any dispute arising out of my employment as described in the section called "Arbitration of Disputes" in the handbook, I will submit it exclusively to binding and final arbitration according to the procedures outlined in the "Employment Arbitration Procedures Manual." ' " (*Id.* at p. 1205.) The personnel handbook contained an agreement to arbitrate and detailed procedures for arbitrating disputes. The personnel handbook also

10

contained a provision that the employer " 'reserves the right to change any provision in this Handbook at any time for any reason without advance notice.' " (*Id.* at p. 1213.) The plaintiff contended this provision for unilateral modification rendered the arbitration agreement illusory and lacking in mutuality.

The appellate court rejected that argument:  " ' "[W]here the contract specifies performance the fact that one party reserves the power to vary it is not fatal if the exercise of the power is subject to prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings." ' [Citations.]  [The employer's] discretionary power to modify the terms of the personnel handbook in writing notice indisputably carries with it the duty to exercise that right fairly and in good faith. [Citation.]  So construed, the modification provision does not render the contract illusory." (*24 Hour Fitness, supra,* 66 Cal.App.4th at p. 1214.)  Here, the trial court concluded that defendant could either modify or terminate the Agreement at will.  The relevant provision, however, states that defendant may only *modify* the agreement, not terminate it.  Following the rationale of *24 Hour Fitness,* we fail to see how such a provision can be deemed "so one-sided as to 'shock the conscience.' " (*Id.* at p. 1213.)

The implied covenant also prevents an employer from modifying an arbitration agreement once a claim has accrued or become known to it.  In *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, an employee claimed the arbitration agreement he signed was illusory because the store retained the unilateral right to amend, modify or revoke the agreement on 30 days' advance written notice, with the change to apply to any unfiled claim, including those that had accrued. (*Id.* at p. 1437.)  Citing *24 Hour Fitness,* the appellate court observed had the agreement to arbitrate simply authorized the defendant to make unilateral modifications, it would not be illusory under California law because the implied covenant of good faith and fair dealing would preclude any change that undermined the employee's rights. (*Peleg,* at pp. 1465–1466.)  However, because the agreement at issue in *Peleg* specifically allowed retroactive modifications, the court

11

held the agreement to arbitrate was illusory and invalid under California law. (*Id.* at pp. 1464–1465.)

Here, plaintiff does not assert that defendant has modified the Agreement in any way. Under these circumstances, we concur with the recent case of *Serpa.* In *Serpa,* the trial court had denied a motion to compel arbitration of a former employee's claims. The employee had signed an agreement to arbitrate all claims arising out of her employment. The arbitration agreement required the parties to bear their own attorney fees regardless of the type of action brought. Like *24 Hour Fitness*, the employee handbook contained a unilateral modification provision. (*Serpa, supra,* 215 Cal.App.4th 695, 700.) After discussing *24 Hour Fitness* and *Peleg,* the court in *Serpa* concluded: "In sum, this is an even stronger case than *24 Hour Fitness* to conclude the implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and saves that agreement from being illusory and thus unconscionable." (*Serpa,* at p. 708, fn. omitted.)[7] Following the same reasoning, we are satisfied that the Agreement here is not substantively unconscionable as it is not "so one-sided as to 'shock the conscience.' "[8]

In sum, the agreement to arbitrate is not unconscionable. In light of our conclusion, it is unnecessary to address the parties' remaining arguments.

## DISPOSITION

The order denying defendant's motion to compel arbitration is reversed.

_____
Dondero, J.

---

[7] The appellate court then severed the unconscionable attorney fee provision. (*Serpa, supra,* 215 Cal.App.4th at p. 709.)

[8] We decline plaintiff's invitation to follow *Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d 1165, a case that fails to discuss *24 Hour Fitness.*

12

We concur:

_____

Margulies, Acting P. J.

_____

Banke, J.

Filed 9/26/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANNA PENG,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FIRST REPUBLIC BANK,<br><br>    Defendant and Appellant. | A135503<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-11-516927)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on August 29, 2013, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

Dated:

_____
Dondero, J.

Trial Court:   San Francisco City and County Superior Court

Trial Judge:   Hon. Harold E. Kahn

Counsel:

Miller Law Group, Joseph P. Mascovich, Mary L. Guilfoyle, Bethany A. Vasquez, Noah Levin for Defendant and Appellant.

Law Offices of Waukeen Q. McCoy, Waukeen Q. McCoy for Plaintiff and Respondent.