Filed 7/30/14  Barnum f. Paul Ryan Associates CA1/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TERRENCE BARNUM,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>PAUL RYAN ASSOCIATES, INC., et al.,<br><br>　　　Defendants and Appellants. | A138345<br><br>(San Francisco City and County<br>Super. Ct. No. CGC-12-522893) |

This case presents two issues:  whether the trial court erred in (1) refusing to enforce a mandatory employment arbitration agreement after finding it contains procedurally and substantively unconscionable provisions and, alternatively, (2) in declining to sever the provision it found substantively unconscionable and enforce the remainder of the agreement.

We shall find the challenged rulings justified and therefore affirm the judgment.

## FACTS

Respondent Terrence Barnum, who at the time of suit had 45 years of experience in the construction industry, was hired by appellant Paul Ryan Associates (Ryan), a general contractor, in December of 2007.  According to Barnum's first amended complaint, Barnum's primary responsibility during the four years he was employed by Ryan was supervision of its employees' work and that of its subcontractors on particular jobsites to insure Ryan's projects were completed timely, safely, economically and in compliance with the plans and specifications.  Throughout his employment at Ryan, Barnum assertedly "performed in an exemplary manner, receiving commendations and

1

accolades from management and clients. By 2011, Barnum believed he was the oldest field employee working for Ryan."

That year, a client of Ryan sued the company and others alleging construction defects, mismanagement, and safety hazards at a large scale residential renovation project in San Francisco, and counsel for the plaintiffs in that case required Barnum to appear for deposition regarding his knowledge of the factual allegations. At a meeting convened prior to the deposition by Ryan's attorneys, Barnum indicated his beliefs that the client's claims were in some measure justified, and Ryan bore a level of responsibility, and stated that he intended to respond honestly to questions put to him about these matters at the deposition. Thereafter, the complaint alleges, Barnum's supervisors questioned him about "his supposed animus against the company," ordered him to return his company computer and phone, prohibited him from further contact with employees, and demanded he provide information he asserts he was unable to provide without his computer, which Ryan refused to return. Ryan then commenced an investigation of allegations that Barnum mistreated subcontractors at a Berkeley jobsite.

Barnum alleges he was wrongfully terminated on August 5, 2011. Barnum was told he was terminated "because of his 'behavior toward employees and subcontractors which also raised a safety issue.' " Barnum asserts that "[i]n reality, the stated grounds for the termination were a pretext for unlawful retaliation and discharge," as alleged in the present action.

Barnum also alleges that appellant Peter Heelan, a superintendent for Ryan, informed others in the construction industry that Barnum "was no longer employed because he had 'gone postal' and abused subcontractors and employees." Barnum alleges that Heelan could not have obtained such information except from Ryan's managerial employees.

Barnum alleges eight causes of action: (1) wrongful termination in violation of public policy; (2) retaliation; (3) intentional infliction of emotional distress; (4) breach of contract; (5) age discrimination; (6) unfair business practices; (7) defamation; and (8)

misrepresentation preventing employment of a former employee in violation of Labor Code section 1050, et seq.

Ryan declined to answer the complaint and, on November 9, 2011, instead filed a petition to compel arbitration and stay the judicial proceedings.

The petition to compel was based on the arbitration provisions set forth in the employment agreement dated and signed by the parties on November 20, 2007. The agreement consists of a two-page email letter from Ryan to Barnum offering at-will employment as "Superintendent" pursuant to specified terms and conditions. After describing salary, benefits, paid time off, restrictions relating to trade secrets and a provision requiring Barnum to "comply with all Ryan policies, rules and procedures as they may be established, stated and/or modified from time to time at Ryan's sole discretion," the agreement includes a lengthy provision relating to arbitration.

The arbitration agreement, written in the same single-space manner and font as the rest of the employment agreement, and not highlighted in any manner, states as follows:

"Except as specified below, to the fullest extent allowed by law, any and all disputes, claims or controversies of any kind arising out of or related in any way to hiring, employment or the termination of employment with Ryan (including without limitation any statutory or common law claims against Ryan or any of its agents or employees) shall be fully and finally resolved through binding arbitration before a neutral arbitrator, pursuant to the California Arbitration Act, California Code of Civil Procedure section 1280, et seq.[1] You and Ryan therefore waive any right to a jury trial on any such claims or matters. Any arbitration between the parties will be conducted before the American Arbitration Association ('AAA') in San Francisco, California, under the AAA's then existing national rules for the resolution of employment disputes, as modified in any respect necessary to comply with the requirements of California law for enforcements of arbitration agreements regarding employment-related disputes. This

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

3

arbitration provision shall not apply to any claims for injunctive or other similar equitable relief. Before commencing any arbitration proceedings, any dispute between me and Ryan or any of its agents or employees shall first be submitted, in writing, to one of Ryan's Senior Vice Presidents for a good faith attempt at resolution under Ryan's internal dispute resolution procedures."

The following paragraph states that the letter "sets forth the entire agreement between you and Ryan of the terms of your employment with Ryan," and includes the proviso that those terms "may only be modified in writing signed by both you and one of Ryan's Senior Vice Presidents."

In a declaration in opposition to the motion to compel, Barnum states under penalty of perjury that Ryan never provided him a copy of the AAA national rules for the resolution of employment disputes at the times he signed his employment application and the employment agreement, or the times at which he acknowledged receipt of the 2007 and 2010 employment Handbooks, which referred to the AAA rules, "or at any other time during my employment." Barnum's declaration also states he "was never provided with a copy of the Ryan internal dispute resolution procedures with my offer letter or my employment application." Finally, Barnum states in the declaration that "I do not recall anyone from Ryan ever discussing the topic of arbitration with me."

In its February 11, 2013 order denying Ryan's motion to compel arbitration and stay the judicial proceedings the court states that "[t]he arbitration agreement is procedurally unconscionable because it is a contract of adhesion and because the rules that would govern the arbitration were not provided. The arbitration agreement is substantively unconscionable because the exception for injunctive or equitable relief operates in favor of employers and goes far beyond merely acknowledging the statutory availability of interim relief." The court stated that it declined to sever that provision "because it is integral to the agreement the parties reached concerning the scope of what would be arbitrated, and its severance would impose on the parties obligations to which they did not agree. This is true even though injunctive relief is not at issue in this case

4

because an employer cannot impose unconscionable terms only to back away once challenged."

## STANDARD OF REVIEW

"Like any other contract, an agreement to arbitrate is subject to revocation if the agreement is unconscionable. [Citations.] [¶] Absent conflicting extrinsic evidence, the validity of an arbitration clause, including whether it is subject to revocation as unconscionable, is a question of law subject to de novo review. [Citations.]" (*Serpa v. California Surety Investigations, Inc*. (2013) 215 Cal.App.4th 695, 702 (*Serpa*).)

## DISCUSSION

As explained in detail in *Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83 (*Armendariz*), unconscionability has both procedural and substantive elements. Although both must appear in order to invalidate a contract or provision thereof, they need not both be present in the same degree: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Id*. at p. 114; accord, *Serpa, supra,* 215 Cal.App.4th at pp. 702-703; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1468-1469.)[2]

"Procedural unconscionability focuses on the elements of suppression and surprise. [Citations.] ' " ' "Oppression arises from an inequality of bargaining power

---

[2] In its opening brief, Ryan claims that the FAA "mandates arbitration under this employment agreement" apparently on the theory that the trial court's ruling amounts to a "blanket rule . . . that an arbitration agreement is automatically unenforceable when it contains a mutual carve-out for injunctive relief claims," and such a rule is inconsistent with *AT&T Mobility LLC v. Concepcion* (2011) 131 S.Ct. 1740. This argument, improperly made for the first time on appeal, is frivolous. So far as the record shows, the contract in this case is between a California corporation and a California resident concerning work to be performed entirely in California; the FAA only applies to contracts involving interstate commerce. (*Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 212.) Moreover, by its own terms, the FAA permits a state court to declare an arbitration contract unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract" (9 U.S.C. § 2), which includes unconscionability.

which results in no real negotiation and an absence of meaningful choice. . . . Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." ' " ' [Citations.]" (*Serpa, supra*, 215 Cal.App.4th at p. 703.)

"Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create an ' " 'overly harsh' " ' or ' " 'one sided' " result[]' [citations], that is, whether contractual provisions reallocate risks in an objectively unreasonable or unexpected manner. [Citation.] Substantive unconscionability 'may take various forms,' but typically is found in the employment context when the arbitration agreement is 'one-sided' in favor of the employer without sufficient justification, for example, when 'the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration.' [Citations.]" (*Serpa, supra*, 215 Cal.App.4th at p. 703.) As our Supreme Court has said, "it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.' " (*Armendariz, supra*, 24 Cal.4th at p. 117; *Kinney v. United HealthCare Services* (1999) 70 Cal.App.4th 1322, 1330 [" '[s]ubstantive unconscionability' focuses on the terms of the agreement and whether those terms are 'so one-sided as to 'shock the conscience" ' "].)

The trial court properly concluded that the arbitration agreement in this case is both procedurally and substantively unconscionable.

***Procedural Unconscionability***

Contracts offered to employees on a take-it-or-leave-it basis commonly contain at least some aspects of unconscionability. As our Supreme Court and Courts of Appeal have reiterated, "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz, supra*, 24 Cal.4th at p. 115;

6

*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071; *Serpa, supra*, 215 Cal.App.4th at p. 704.)

The trial court conclusion that the arbitration agreement in this case was procedurally unconscionable rested not only on the fact that the employment agreement was a contract of adhesion, which Ryan does not challenge, but also on the undisputed fact that Ryan never provided Barnum with either the AAA rules that would govern the arbitration or the procedures and rules governing the internal pre-arbitration dispute resolution process mandated by the agreement, subsequent versions of which changed certain terms of the agreement.

Ignoring what appears to us to be the rationale of the court's ruling, Ryan assumes that the ruling is based upon an erroneous rejection of the settled proposition that employers and employees may agree on specific rules for the arbitration, such as those of the AAA, and incorporate them by reference in the arbitration agreement. Ryan's assumption is reflected in the four cases on which he relies: *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1442 (*Greenspan*); *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1123; *Roman, supra,* 172 Cal.App.4th at pages 1475-1476; *Dream Theater, Inc. v. Dream Theater* ( 2004) 124 Cal.App.4th 547, 556.[3] However, in none of these cases was there any dispute between the parties as to the arbitration rules incorporated by reference into the parties' agreement or whether they had been provided to the employee by the employer; the issue in these cases was simply the *effect* of indisputably applicable rules.

For example, in *Greenspan, supra*, 185 Cal.App.4th 1413, the defendants argued that an arbitration award should be vacated because, among other things, the plaintiff

---

[3] Ryan also relies on *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107 (*Martinez*), apparently for the sole reason that (at a different page from those cited by Ryan) it reiterates the unremarkable statement that an agreement to arbitrate in a particular forum is " ' "as integral a term of a contract as any other, which courts must enforce." ' " (*Id.* at p. 121, quoting *Alan v. Superior Court* (2003) 111 Cal.App.4th 217, 228, quoting *Wall Street Associates v. Becker Paribas, Inc.* (S.D.N.Y. 1993) 818 F.Supp. 679, 683.)

7

trustee did not plead joint and several liability on the breach of contract claim and thus the issue was not arbitrable. The court rejected the argument. Because under rule 11 of JAMS Rules, which the parties agreed to, "the arbitrator, not a court, determines what issues are arbitrable, and we consequently defer to the arbitrator's determination that the issue of joint and severable liability was arbitrable." (*Greenspan,* at p. 1435.) The plaintiff in *Greenspan* never complained that he had not been provided or did not know the provisions of rule 11 of JAMS Comprehensive Arbitration Rules & Procedures. (*Greenspan,* at pp. 1442-1443.)

In *Rodriguez v. American Technologies, Inc., supra*, 136 Cal.App.4th 1110, the plaintiffs claimed that two of their grievances fell outside the scope of the arbitration clause. The court rejected the claim because the contract mandated arbitration in accordance with the AAA's Construction Industry Rules, and rule 8(a) of those rules gave the "arbitrator . . .the power to rule on his or her own jurisdiction." "By incorporating rule 8(a) into their agreement, the parties clearly evidenced their intention to accord the arbitrator the authority to determine issues of arbitrability." (*Rodriguez,* at p. 1123.) Again, unlike this case, the failure of the defendant in *Rodriguez* to provide a copy of the rules that would govern the agreed upon arbitration was not complained of.

In *Roman v. Superior Court, supra*, 172 Cal.App.4th 1462, the plaintiff employee contended that the arbitration agreement imposed an unconscionable limit on discovery. Disagreeing, the court pointed out that the 1997 AAA arbitration rules incorporated into the arbitration agreement, and also the 2007 AAA rules in effect at the time arbitration was demanded, gave the arbitrator the authority to order such discovery as he or she deemed necessary to full and fair exploration of the issues in dispute, consistent with the expedited nature of discovery, which was consistent with the scope of discovery approved in *Armendariz, supra*, 24 Cal.4th at page 106. (*Roman v. Superior Court, supra*, 172 Cal.App.4th at pp. 1475-1476.) Once again, the plaintiff did not claim he was never made aware of the applicable rules.

*Dream Theater, Inc. v. Dream Theater, supra,*124 Cal.App.4th 547, also involved a dispute about the arbitrability of third party claims under the arbitration clause of their

contract. The Court of Appeal reversed the trial court's stay of arbitration because the contract incorporated the AAA Commercial Arbitration Rules, which "specify that the arbitrator will decide disputes over the scope of the arbitration agreement." (*Dream Theater, Inc.,* at p. 557.)

The issue in the present case is not the *meaning* of the AAA rules incorporated by reference into the arbitration agreement, as in the cases Ryan relies on, but on whether Ryan ever gave Barnum either a uniform set or clear description of the AAA rules governing the arbitration, or the other "policies, rules and procedures [relating to Ryan's internal dispute resolution process] as they may be established, stated and/or modified from time to time at Ryan's sole discretion" which the agreement also imposed on employees.

The case law pertaining to whether it is procedurally unconscionable to incorporate, but not attach, applicable arbitration rules turns heavily on the circumstances. One line of cases finds it "oppressive to require the party to [an arbitration agreement] to make an independent inquiry to find the applicable rules in order to fully understand what she was about to sign." (*Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 486, citing *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, in which the court refused to enforce an arbitration clause that incorporated by reference but failed to attach the rules of the Better Business Bureau, *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 721 (*Fitz*), in which the failure to attach the AAA rules made the agreement procedurally unconscionable, and *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393 (*Trivedi* ), holding, without discussion, that failure to attach arbitration rules added to the procedural unconscionability; accord, *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 84.)

On the other hand, another line of cases, the most recent of which distinguishes those just cited, indicates that the failure to attach the applicable rules is not improper unless for some apparent reason it produces the requisite surprise or oppression. (*Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1469-1472 (*Peng*); *Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1281-1282; *Lagatree v. Luce,*

9

*Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1126-1127; *Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1318; accord, *Galen v. Redfin Corp.* (2014) ___ Cal.App.4th ___ [2014 WL 3564056]; *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 691-692.)

Barnum claims that in the circumstances of this case the failure to provide the pertinent AAA rules and the rules governing Ryan's internal dispute resolution process does create surprise and oppression.

As earlier noted, the arbitration agreement provides that arbitration will be conducted "under the AAA's then existing national rules for the resolution of employment disputes, as modified in any respect necessary to comply with the requirements of California law for enforcement of arbitration." The agreement also provides that Barnum is required to "comply at all times with all Ryan policies, rules and procedures as they may be established, stated and/or modified from time to time at Ryan's sole discretion." As indicated, Barnum stated in his declaration in opposition to the motion to compel arbitration that he was also never provided a written copy of "the Ryan internal dispute resolution procedures" at any time during his employment; nor did he recall "anyone from Ryan ever discussing the topic of arbitration with me."

After he signed the agreement Barnum was at various times required to sign documents acknowledging requirements different from those specified in the arbitration agreement, which created confusion and exacerbated the failure to provide the applicable AAA rules. On November 25, 2007, the day before he signed the employment agreement containing the arbitration agreement, Barnum executed a five-page "employment application" containing provisions that differed in certain particulars from those in the employment agreement. For example, it required that arbitration be conducted in San Mateo, rather than in San Francisco, and required pre-arbitration submission of any dispute to Ryan's "chief operating officer" rather than to a "Senior Vice President" of the company. In 2010, Barnum was apparently provided an updated "Ryan Employee Handbook" (Handbook) and acknowledged receipt in a written document that reiterated the arbitration provisions contained in the employment agreement, but added a new

10

provision stating that any policy revisions of the Handbook "will be issued in writing by RYAN's President and that no other Company official is authorized to change or alter any provisions of the Handbook either orally or in writing." Because the Handbook Barnum acknowledged receiving is not itself a part of the record, it is unclear whether it also modified the arbitration provision in any way.

The case Ryan rests upon most heavily is *Peng, supra*, 219 Cal.App.4th 1462, which was recently decided by Division Five of this court. Distinguishing many of the cases Barnum relies upon, *Peng* concludes that "the failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability." (*Id.* at p. 1472.)

In our view, the facts of this case differ in material respects from those of *Peng* and the cases it relies upon. (See *Peng*, *supra*, 219 Cal.App.4th at p. 1470, citing *Giuliano v. Inland Empire Personnel, Inc.*, *supra*, 149 Cal.App.4th at pp. 1281-1282; *Lagatree v. Luce, Forward, Hamilton & Scripps*, *supra*, 74 Cal.App.4th at pp. 1126-1127; *Izzi v. Mesquite Country Club*, *supra*, 186 Cal.App.3d at p. 1318.)

Barnum's procedural unconscionability argument rests in some measure on the fact that the arbitration provision at issue "pegs both the scope and procedure of the arbitration to rules which might change" (*Harper v. Ultimo, supra,* 113 Cal.App.4th at p. 1407), but it rests additionally on the inability of even the most diligent employee to know—either at the time they signed the agreement or thereafter—Ryan's internal dispute resolution rules and procedures. As previously noted, the arbitration agreement requires that "[b]efore commencing any arbitration proceedings, any dispute . . . shall first be submitted . . . [for] resolution under Ryan's internal dispute resolution procedures," and further provides that the "Ryan policies, rules and procedures" relating to this internal process "may be established, stated and/or modified  from time to time at Ryan's sole discretion." Therefore, unlike *Peng, supra*, 219 Cal.App.4th 1462, and the cases it relies upon, we are not confronted with "the failure to attach the AAA rules, *standing alone*." (*Id*. at p. 1472, italics added.)

11

The problem in this case is not just that presented in *Harper v. Ultimo, supra,* 113 Cal.App.4th 1402; i.e., that the applicable AAA rules might be substantially less favorable than those existing at the time of the agreement to arbitrate, which would at the very least necessitate an expensive preliminary legal battle. (*Harper,* at p. 1406.) The AAA, an alternative dispute resolution service provider, presents itself and is generally considered neutral; it could not survive in the marketplace in which it competes if it suddenly imposed rules that fell more onerously on employees than employers. Ryan is unconstrained by that marketplace, however, and its economic interests are very different from those of the AAA. The prospect that Ryan may subsequently alter the internal dispute resolution "policies, rules and procedures" existing at the time of the agreement "from time to time" in its "sole discretion" is therefore far more problematical for employees than the prospect that the AAA rules may adversely change. Moreover, the applicable rules have been changing. As Barnum points out, the iterations of the arbitration provisions variously set forth in the employment agreement, the employment application and various employment Handbooks Barnum was periodically required to acknowledge receipt of in writing were different from one another, and the changes were not highlighted in any way to underscore the significance of the provisions.

In short, what we have in this case is not merely a contract of adhesion and the failure of the employer to provide employees even the then existing AAA rules, which it could easily have done, but also the unilateral ability of the employer to impose pre-arbitration dispute resolution rules or conditions that even the most diligent employees could not learn of or anticipate at the time they agreed to arbitrate.[4] Under the sliding scale set forth in *Armendariz, supra*, 24 Cal.App.4th at page 114, the potential for such oppression and/or surprise inherent in the contract of adhesion before us is sufficient

---

[4] It is appropriate to note that the order denying Ryan's motion to compel did not indicate that the "rules that would govern the arbitration" refer *solely* to *AAA* rules, and also that the arbitration agreement imposes a pre-arbitration process that conforms to "Ryan's internal dispute resolution procedures."

12

evidence of procedural unconscionability to warrant inquiry into the issue of substantive unconscionability.

*Substantive Unconscionability*

### A. *Mutuality*

The arbitration agreement provides that all disputes related to "hiring, employment or the termination of employment with Ryan (including without limitation any statutory or common law claims against Ryan or any of its agents or employees)" must be resolved through binding arbitration. Exempted from the arbitration requirement, however, are "any claims for injunctive or other similar equitable relief." The trial court found that the exception for injunctive and other equitable relief was substantively unconscionable because it "operates in favor of employers and goes far beyond merely acknowledging the statutory availability of interim relief."

Ryan argues that this carve-out provision for injunctive and other equitable relief is not substantively unconscionable because it is mutual and does not exclude only certain claims more likely to be pursued by an employer. Barnum counters that this is just the type of relief most likely to be sought by the stronger party, i.e., the employer, which renders the provision substantively unconscionable.

The issue of mutuality of arbitration provisions was addressed in *Armendariz*, *supra*, 24 Cal.4th at pages 115-116, in which the plaintiff argued that an arbitration agreement that required employees to arbitrate their wrongful termination claims against their employer, but did not require the employer to arbitrate any claims it might have against its employees, was substantively unconscionable. Our Supreme Court agreed with the plaintiff, explaining that a " 'modicum of bilaterality' " is required in arbitration agreements because, "[g]iven the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness . . . . Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a

13

means of maximizing employer advantage. Arbitration was not intended for this purpose." (*Armendariz*, at pp. 116, 117-118, quoting *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1541 (*Stirlen*).)

The parties discuss a number of cases, including, for example, *Fitz*, *supra*, 118 Cal.App.4th at pages 724-725, in which the employer claimed that its arbitration agreement was " 'completely bilateral' " because it did not "carve out particular types of claims where employees are required to arbitrate, but the [employer] is permitted to seek redress for the same claim in a judicial forum," and because the agreement permitted both employees and the employer to "submit disputes regarding noncompete agreements and intellectual property rights to the courts." The appellate court rejected the employer's argument and held that the arbitration agreement was "unfairly one-sided because it compels arbitration of the claims more likely to be brought by [the employee], the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by [the employer], the stronger party." (*Id*. at p. 725.)

In *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 175-176 (*Mercuro*), the appellate court found substantively unconscionable an arbitration agreement that specifically covered breach of contracts claims, tort claims, discrimination claims, and claims for violation of, inter alia, any federal or state statute, but specifically excluded " 'claims for injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information . . . .' " The agreement was one-sided in that it compelled arbitration of the claims employees were most likely to bring against their employer and exempted from arbitration the claims the employer was most likely to bring against its employees. (*Id*. at p. 176; see also *Martinez*, *supra*, 118 Cal.App.4th at p. 115 [substantive unconscionability found where arbitration agreement specifically exempted from its terms any claims by employer "for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information"]; *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 274 (*O'Hare*) [arbitration agreement was substantively unconscionable

14

where it required employee to arbitrate any work-related claim while explicitly reserving employer's right to file a lawsuit seeking injunctive and equitable relief based on employee's alleged breach of confidentiality provisions]; *Stirlen*, *supra*, 51 Cal.App.4th at pp. 1528, 1537 [employer's reservation, in its arbitration agreement, of "unilateral right to litigate rather than arbitrate" equitable claims for patent infringement and improper use of confidential information could not be justified by need for provisional remedies, given that section 1281.8, subdivision (b), addressed such concerns].)

In *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1147-1148, Division Three of this District found that an arbitration agreement that exempted from the arbitration requirement "claims typically brought by employers—namely, those seeking declaratory and preliminary injunctive relief to protect [the company's] proprietary information and noncompetition/nonsolicitation provisions—while restricting to arbitration any and all claims plaintiffs might bring," supported the trial court's finding of substantive unconscionability.

In *Trivedi*, *supra*, 189 Cal.App.4th at pages 396, 397, Division Four of this District found substantive unconscionability in a provision in an arbitration agreement, which provided that " 'provisional injunctive relief may, but need not, be sought in a court of law while arbitration proceedings are pending, and any provisional injunctive relief granted by such court shall remain effective until the matter is finally determined by the Arbitrator.' " (*Id*. at p. 392.) The court noted that this provisional equitable relief discussed in the arbitration agreement was no broader than that already provided for in subdivision (b) of section 1281.8, which states that a party to an arbitration agreement may file "in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." (§ 1281.8, subd. (b); see *Trivedi*, at p. 396.) But the court concluded that the provision in question

15

nevertheless favored the employer because it was more likely that the employer would seek injunctive relief. (*Id.* at p. 397.)[5]

Here, we conclude that, although the carve-out for injunctive and similar equitable relief is nominally mutual, the trial court correctly found that it in fact favors claims the employer is likely to bring and is therefore substantively unconscionable. (See *Armendariz, supra*, 24 Cal.4th at p. 120.) The provision in the agreement requiring that all claims related to Barnum's "hiring, employment or the termination of employment with Ryan (including without limitation any statutory or common law claims against Ryan or any of its agents or employees)" are subject to binding arbitration, refers to claims that will primarily be pursued by Barnum. (See, e.g., *O'Hare, supra*, 107 Cal.App.4th at p. 274; *Mercuro, supra,* 96 Cal.App.4th at pp. 175-176.) Moreover, any injunctive or other equitable relief pertaining to those claims that Barnum might seek in the trial court would most likely be the type of "provisional" equitable relief authorized by section 1281.8, subdivision (b), in all arbitration cases. (See *Stirlen, supra*, 51 Cal.App.4th at pp. 1528, 1537.) As the trial court noted, the carve-out in this case "goes far beyond merely acknowledging the statutory availability of interim relief" pursuant to section 1281.8 in that it permits any and all claims for injunctive or similar equitable relief to be litigated in court.

While, as Ryan points out, there are statutes that permit an employee to seek more permanent equitable relief (see, e.g., 29 U.S.C. §§ 626(c), 633a(c) [age discrimination]; 42 U.S.C. § 2000e-5(g)(1) [employment discrimination]), it is improbable that individual employees would have the incentive or wherewithal to bring a separate action in the trial court under such a statute solely for equitable relief, without the possibility of also pursuing a claim for damages. An employer, on the other hand, is plainly more likely

---

[5] Our Supreme Court has granted review in two cases in which the Second District Court of Appeal disagreed with the mutuality analysis in *Trivedi*, given the availability of the provisional remedies in section 1281.8, subdivision (b), to both parties. (*Leos v. Darden Restaurants, Inc.* (2013) 217 Cal.App.4th 473, review granted September 11, 2013, S212511; *Baltazar v. Forever 21, Inc.* (2012) 212 Cal.App.4th 221, review granted March 20, 2013, S208345.)

than an employee to pursue claims for permanent injunctive or other equitable relief, whether or not the types of claims likely to be so-litigated are explicitly spelled out in the arbitration agreement. (See, e.g., *Martinez, supra*, 118 Cal.App.4th at p. 115; *Mercuro, supra,* 96 Cal.App.4th at pp. 175-176; compare *Trivedi*, *supra*, 189 Cal.App.4th at pp. 396-397 [finding arbitration agreement substantively unconscionable because it permitted parties to litigate claims for provisional injunctive relief].)[6]

In short, the provision in this case requiring that all claims related to Barnum's hiring, employment, or termination—"including without limitation any statutory or common law claims against Ryan"—be resolved through binding arbitration, coupled with the inclusion of a carve-out provision solely for claims related to injunctive or other equitable relief, demonstrates a bias toward arbitration of claims Barnum is more likely to bring and litigation of claims more likely to be pursued by Ryan. We therefore conclude that, because the carve-out provision in question lacks a " 'modicum of bilaterality' " or any business justification for its inclusion, it is substantively unconscionable and cannot be enforced. (*Armendariz, supra*, 24 Cal.4th at pp. 117, 118; *Stirlen*, *supra*, 51 Cal.App.4th at p. 1541, 1542.)

### B. *Pre-Arbitration Internal Dispute Resolution Procedures*

The parties also disagree about whether other language in the arbitration agreement contributes to its substantive unconscionability. That language provides that, "[b]efore commencing any arbitration proceedings, any dispute between me and Ryan or any of its agents or employees shall first be submitted, in writing, to one of Ryan's Senior Vice Presidents for a good faith attempt at resolution under Ryan's internal dispute resolution procedures."

---

[6] Although not raised by the parties and therefore not a basis for our finding of non-mutuality, we observe that other language in the arbitration agreement further adds to the appearance of one-sidedness by providing that "any and all disputes, claims or controversies of any kind arising out of or related in any way to hiring, employment or the termination of employment with Ryan (including without limitation any statutory or common law claims *against* Ryan or any of its agents or employees) shall be fully and finally resolved through binding arbitration . . . ." (Italics added.)

17

In *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1282-1283 (*Nyulassy*), the appellate court addressed this same question in similar circumstances: "The employment agreement—in addition to compelling plaintiff to arbitrate all of his disputes with defendant—requires him to submit to discussions with his supervisors in advance of, and as a condition precedent to, having his dispute resolved through binding arbitration. While on its face, this provision may present a laudable mechanism for resolving employment disputes informally, it connotes a less benign goal. Given the unilateral nature of the arbitration agreement, requiring plaintiff to submit to an employer-controlled dispute resolution mechanism (i.e., one without a neutral mediator) suggests that defendant would receive a 'free peek' at plaintiff's case, thereby obtaining an advantage if and when plaintiff were to later demand arbitration."[7]

Similarly, in *Pokorny v. Quixtar, Inc.* (9th Cir. 2010) 601 F.3d 987, 999 (*Pokorny*), the Ninth Circuit Court of Appeal, applying California law, found, with respect to a non-mutual arbitration agreement, the requirement that a plaintiff's potential claims be submitted to an employer-controlled dispute resolution process before proceeding to arbitration "amount[ed] to little more than an exploratory evidentiary hearing" for the defendant, which clearly gave it "an unfair advantage" if the plaintiff subsequently demanded arbitration.

As in *Nyulassy* and *Pokorny*, and as discussed, *ante*, the arbitration provision here lacks mutuality. We agree with those courts' analyses and likewise conclude that, taken together with the carve-out for injunctive and other equitable relief, the pre-arbitration dispute resolution requirement provides Ryan with an unfair advantage and is therefore

---

[7] In addition to finding that the arbitration agreement was unfair because it was both unilateral and required the employee to submit to the employer's internal dispute resolution process, the court in *Nyulassy* discussed a third factor that supported its finding of substantive unconscionability: the time limitations placed on the plaintiff's assertion of any claims against the defendant. (*Nyulassy*, *supra*, 120 Cal.App.4th at p. 1283.)

18

substantively unconscionable. (See *Nyulassy*, *supra*, 120 Cal.App.4th at pp. 1283-1284, *Pokorny*, *supra*, 601 F.3d at p. 999.)[8]

### Severance

The trial court declined to sever the unconscionable carve-out provision exempting injunctive and other equitable relief from the arbitration requirement because it found that this term was "integral to the agreement the parties reached concerning the scope of what would be arbitrated, and its severance would impose on the parties obligations to which they did not agree. This is true even though injunctive relief is not at issue in this case because an employer cannot impose unconscionable terms only to back away once challenged."

Ryan contends the court should have severed the offending provision instead of refusing to enforce the entire agreement.

We review the trial court's refusal to sever the unconscionable provisions for an abuse of discretion. (*Armendariz*, *supra*, 24 Cal.4th at p. 122, *Ajamian v. CantorCO2e,*

---

[8] Cases cited by Ryan for the proposition that inclusion of a pre-arbitration dispute resolution procedure is not substantively unconscionable are distinguishable. In *Serpa, supra,* 215 Cal.App.4th at pages 704-705, 710, the appellate court found that the obligation to arbitrate was mutual and distinguished the agreement there from "the provisions in *Nyulassy*, which the court found unacceptable primarily because it was yet another employer-based mechanism in an agreement permeated by unilateral provisions favoring the employer." Moreover, to the extent the language in question went beyond merely requiring an "informal notice of grievance," "a requirement that internal grievance procedures be exhausted before proceeding to arbitration is both reasonable and laudable in an agreement containing a mutual obligation to arbitrate." (*Serpa*, at p. 710; accord, *Quevedo v. Macy's, Inc.* (C.D.Cal. 2011) 798 F.Supp.2d 1122, 1140 [noting that *Nyulassy* did not indicate that a required preliminary internal dispute resolution procedure, without more, rendered an arbitration agreement unconscionable]; cf. *Sanchez v. CarMax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 406 [arbitration provision requiring employee, upon initiating arbitration, to complete two-page form that was not part of a grievance procedure, stating basis of claim and listing names of witnesses and employee's attorney, was not unconscionable].) Here, unlike in *Serpa*, the internal dispute resolution process requires more than a mere notice of grievance and, moreover, the obligation to arbitrate is not mutual.

19

*L.P.* (2012) 203 Cal.App.4th 771, 802 (*Ajamian*); see also Civ. Code, § 1670.5, subd. (a) [recognizing judicial discretion to sever unconscionable provisions of a contract].)

"In deciding whether to sever terms rather than to preclude enforcement of the provision altogether, the overarching inquiry is whether the interests of justice would be furthered by severance; the strong preference is to sever *unless* the agreement is "permeated" by unconscionability. [Citations.]

" 'An employment arbitration agreement can be considered permeated by unconscionability if it "contains *more than one* unlawful provision. . . . Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." [Citation.]' [Citations.]" (*Ajamian*, *supra*, 203 Cal.App.4th at pp. 802-803.)

In the present case, we have found that the arbitration agreement is procedurally unconscionable and also includes two provisions that are substantively unconscionable. Given the presence of these unconscionable provisions, we conclude the trial court did not abuse its discretion in determining that the agreement is permeated with unconscionability and cannot be enforced. (See *Armendariz*, *supra*, 24 Cal.4th at p. 124 [where arbitration agreement contained more than one unlawful provision, "[s]uch multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage"]; accord, *Ajamian*, *supra*, 203 Cal.App.4th at pp. 802-803.)[9]

---

[9] We note that the trial court did not address whether the provision requiring submission of claims to an internal dispute resolution process was substantively unconscionable. The existence of that second unconscionable provision only adds to the reasonableness of the court's conclusion that the agreement could not be enforced. (See *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 [appellate court examines record independently to determine whether trial court's decision is correct, without deference to trial court's ruling or reasoning].)

**DISPOSITION**

The order is affirmed.[10]

 

_____

Kline, P.J.

We concur:

_____

Richman, J.

_____

Brick, J.*

 

\* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

---

[10] In light of our conclusion that the trial court properly denied Ryan's motion to compel arbitration based on the combination of procedural and substantive unconscionability already discussed *ante*, we need not address the parties' arguments regarding additional possible bases for finding the arbitration agreement unconscionable. Likewise, we need not address Barnum's claim that Ryan forfeited its right to arbitration by pursuing discovery in the trial court while the matter was stayed pending appeal.

For that reason, we shall deny each party's motion to augment the record to include evidence related to this latter issue.