Filed 2/23/15  Eakins v. Corinthian Colleges CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ANNA EAKINS, | |
| Plaintiff and Respondent, | E058330 |
| v. | (Super.Ct.No. CIVRS1207685) |
| CORINTHIAN COLLEGES, INC. et al., | **OPINION** |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Keith D. Davis, Judge.  Reversed and remanded with directions.

Payne & Fears, Jeffrey K. Brown, and Matthew J. Cute; Homer Bonner Jacobs and Christopher King for Defendants and Appellants.

Law Offices of Carlin & Buchsbaum, Gary R. Carlin, Brent S. Buchsbaum, and Roger E. Haag for Plaintiff and Respondent.

1

When plaintiff Anna Eakins enrolled at a college owned and operated by defendant Corinthian Colleges, Inc. (Corinthian), she signed an enrollment agreement requiring the submission of disputes to arbitration pursuant to the "Consumer Rules" of the American Arbitration Association (AAA). Thus, when she sued Corinthian and others, alleging discrimination based on sexual orientation, the defendants moved to compel arbitration.

The trial court refused to compel arbitration; it ruled that the arbitration provisions were unconscionable because (1) it was not clear what the "Consumer Rules" referred to and Eakins was not given a copy of them, (2) the Consumer Rules limited discovery, and (3) the enrollment agreement made Eakins liable for defendants' attorney fees.

Defendants appeal, contending:

1. The trial court erred by reaching the issue of unconscionability, because this was consigned to the arbitrator.

2. The trial court erred by ruling that the arbitration provisions were unconscionable.

We will hold that the trial court could properly decide whether the arbitration provisions were unconscionable, because they did not clearly and unmistakably provide that issues of enforceability were reserved for the arbitrator. However, we will also hold that the trial court erred by ruling that the arbitration provisions were unconscionable. Accordingly, we will reverse and remand with directions to compel arbitration.

I

FACTUAL BACKGROUND

The following facts were shown by the declarations in support of and in opposition to the petition to compel arbitration.

Corinthian owns and operates Everest College (Everest), which has multiple locations in California. Eakins enrolled in Everest, at its Ontario Metro campus, twice — once in 2010, when she started an associate's degree program, and again in 2011, when she started a bachelor's degree program. Each time, she signed one document entitled "Application" (capitalization altered) (Application) and a second document entitled "Addendum & Disclosures" (Addendum). We will refer to the Application and the Addendum collectively as the "Enrollment Agreement." The relevant provisions of the 2010 Enrollment Agreement and the 2011 Enrollment Agreement were identical, except as noted below.

The Application was six pages long. It provided:

"Acknowledgement of Waiver of Jury Trial and Availability of AAA Rules

" . . . I acknowledge that . . . both I and The School are irrevocably waiving rights to a trial by jury, and are selecting instead to submit any and all claims to the decision of an arbitrator instead of a court.[1] I also acknowledge that I may at any time, before or

---

**1** At this point, the 2011 version of the Application added the words, "per the terms detailed in the Addendum."

after my admission, obtain a copy of the Consumer Rules of the American Arbitration Association, at no cost, from The School President."

The Application incorporated the Addendum by reference. The Addendum was five pages long. Eakins had to initial separately every provision of the Addendum that applied to her. These included the following:

"**GENERAL RELEASE OF CLAIMS**

"*I hereby release and hold this School harmless from and against any and all claims of any kind whatsoever, including allegations related to needle sticks, allied health and automotive practice and techniques, slips and falls and quality of equipment and instruction[] (collectively, 'Claims'), against the School (including its present and former parent companies, insurers, representatives and all persons acting by or through them), which I may have for any reason arising out of or relating to my education. I am aware of the risks involved with my education and knowingly assume those risks following my investigation into possible injuries and the nature and quality of my education. I further agree that if I bring any Claim against the School, I shall reimburse the School for its attorney's fees and costs incurred as a result thereof. I may opt out of this general release of Claims provision by delivering a written statement to that effect received by the School within 30 days of my first execution of an Enrollment Agreement with the School.*"

**"AGREEMENT TO BINDING ARBITRATION AND WAIVER OF JURY TRIAL**

"I agree that any dispute arising from my enrollment, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association (AAA) under its Consumer Rules.

"**Terms of Arbitration**

"1. Both the School and I irrevocably agree that any dispute between us shall be submitted to Arbitration.

"2. Neither the School nor I shall file or maintain any lawsuit in any court against the other, and agree that any suit filed in violation of this Agreement shall be dismissed by the court in favor of an arbitration conducted pursuant to this Agreement. Both the School and I agree that filing a court action will cause damage to the other party. We agree that an appropriate measure of this damage includes the costs and attorney's fees actually incurred in compelling arbitration. Such damages shall be paid by the party who has filed an action in court within 30 days of the court's order compelling arbitration.

"3. The costs of the arbitration filing fee, the arbitrator's compensation and facilities fees will be paid by the School, to the extent that these fees are greater than the applicable Court filing fee. . . ."

"**Procedure for Filing Arbitration** [¶] . . .

"2. If I desire to file Arbitration, I should first contact the School's President, who will provide me with a copy of the AAA Consumer Rules. If I desire to file Arbitration, I should then contact the AAA, which will provide the appropriate forms and detailed instructions. I should bring this document to the AAA."

The Enrollment Agreement gave Eakins the right to cancel and to receive a refund within seven days after enrollment or until attendance at the first class session, whichever was later.

Eakins was not told that she could negotiate any of the terms in any of the documents. She was not given a copy of any arbitration rules.

This action was filed in 2012. In 2013, Eakins's attorney phoned the AAA's customer service hotline and spoke to an AAA representative. When he asked for a copy of the AAA's "Consumer Rules," the representative told him there was no such document.

He then explained that he had an arbitration agreement stating that any arbitration would be conducted under the AAA's "Consumer Rules." The representative suggested that he might be looking for the AAA's "Commercial Rules" and helped him find those rules on the AAA's website.

Above the Commercial Rules, the attorney noticed a link to "Supplementary Procedures for Consumer-Related Disputes" (Supplementary Procedures). When he

asked the representative about this, she said they "might apply."  He was able to access and print the Supplementary Procedures.

The Commercial Rules provided:

"R-7.  Jurisdiction

"The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."

The Commercial Rules also provided:

"R-10.  Fixing of Locale

"The parties may mutually agree on the locale where the arbitration is to be held. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within 15 days after notice of the request . . . , the locale shall be the one requested.  If a party objects to the locale requested by the other party, the AAA shall have the power to determine the locale, and its decision shall be final and binding."

Finally, the Commercial Rules provided:

"R-21.  Exchange of Information.

"(a)  At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct

"(i)  the production of documents and other information and

"(ii)  the identification of any witnesses to be called.

7

"(b)  At least five business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

"(c)  The arbitrator is authorized to resolve any disputes concerning the exchange of information."

The Supplementary Procedures referred to themselves internally as "[t]he AAA's Consumer Rules."  They supplemented the Commercial Rules in certain disputes between businesses and consumers.[2]

## II

## PROCEDURAL BACKGROUND

The defendants in this action are Corinthian; Richard Mallow, who was allegedly the president of Everest; and Denise Greco, who was allegedly one of Eakins's professors at Everest.  Eakins alleges that defendants discriminated against her based on her sexual orientation.  She asserts causes of action for:  (1) violation of Education Code section 220 et seq. [prohibiting discrimination by educational institutions that receive state financial assistance], (2) violation of the Unruh Act (Civ. Code, § 51 [prohibiting discrimination by businesses]), (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, and (5) violation of Education Code section 66250 et seq. [prohibiting discrimination by postsecondary educational institutions].

---

[2]    The Supplementary Procedures provided, among other things, that any hearing would be governed by the "Expedited Procedures" of the Commercial Rules. Eakins does not cite or discuss the Expedited Procedures and does not claim that the Expedited Procedures are relevant.

8

Defendants filed a petition to compel arbitration. In her opposition, Eakins argued that the arbitration agreement was unconscionable because:

1. It did not attach and did not correctly identify the applicable arbitration rules;

2. Eakins could be required to pay defendants' attorney fees and costs; and

3. Depending on the location of the arbitration, Eakins's expenses could be greater than those she would incur in court.

In their reply, defendants argued that:

1. It was up to the arbitrator to decide whether the arbitration agreement was unconscionable; and

2. The arbitration agreement was not unconscionable.

After hearing argument, the trial court denied the petition. It found that the arbitration agreement was unconscionable. It explained:

"[T]here really wasn't any genuine opportunity for there to be some discussion with regard to what the arbitration rules were, . . . and perhaps most troubling to me, . . . a copy of the AAA . . . Consumer Rules . . . was available only at the dean's office and there had to be either a request made or a trip to the dean's office in order to actually obtain those rules. And . . . there really isn't a set of AAA Consumer Rules, as such, that exist. . . . [¶] This is a bit troubling because there is uncertainty with regard to what those rules actually are . . . . [C]ounsel understand those AAA rules to . . . contain some provisions with regard to fee shifting, and perhaps very limited discovery . . . ."

9

## III

## THE TRIAL COURT'S AUTHORITY TO DETERMINE UNCONSCIONABILITY

Defendants contend that the arbitration provisions delegated the issue of unconscionability to the arbitrator.

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' [Citations.]" (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83.)

"Because the parties are the masters of their collective fate, they can agree to arbitrate almost any dispute — even a dispute over whether the underlying dispute is subject to arbitration. However, there is a presumption that they have *not* agreed to this. 'The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the "*question of arbitrability*," is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." [Citations.]' [Citation.]" (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1286 [Fourth Dist., Div. Two].) "[Q]uestions of arbitrability . . . include whether . . . a given arbitration clause . . . is unenforceable as unconscionable. [Citation.]" (*Independent Assn. of Mailbox Center Owners, Inc. v. Superior Court* (2005) 133 Cal.App.4th 396, 406.)

"[T]he 'who (primarily) should decide arbitrability' question . . . is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. [Citation.] And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit

10

to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide. [Citations.]" (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 945.)

Following the lead of *Rent-a-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 68-69, courts commonly call an agreement to have the arbitrator determine questions of arbitrability a "delegation provision" or a "delegation clause." (E.g., *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1555.)

"Where, as here, the evidence is not in conflict, we review the trial court's denial of arbitration de novo. [Citation.]" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

The Enrollment Agreement provided for arbitration of "any and all claims" and "any dispute." However, such broad but general language is not a sufficiently clear and unmistakable manifestation of the intent to delegate the question of arbitrability to the arbitrator. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 783-788 [agreement to arbitrate "all matters" and "[a]ny disputes, differences or controversies"].)

Defendants therefore argue that the Enrollment Agreement incorporated the AAA Consumer Rules by reference,[3] including the rule giving the arbitrator "the power to rule

---

[3]    In part IV.A, *post*, we will agree with defendants that the Enrollment Agreement's incorporation of the Consumer Rules was neither vague nor unconscionable.

on . . . objections with respect to the existence, scope or validity of the arbitration agreement." They claim that this supplied the necessary clear and unmistakable evidence of intent.

We disagree, for the following reasons, as stated in *Ajamian v. CantorCO2e, L.P.*, *supra*, 203 Cal.App.4th at p. 788:

"Some courts have, in fact, held that a reference to the rules of arbitration services, which rules permit the arbitrator to determine issues of his or her jurisdiction, constitutes clear and unmistakable evidence that the parties intended to delegate the issue to the arbitrators. [Citing federal cases.]

"Even California cases have reached a similar conclusion, albeit not with respect to a claim that an arbitration clause was *unconscionable* . . . . [Citing *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1123 [Fourth Dist., Div. Three]; *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 550 [Second Dist., Div. Four].]

"Other reported decisions, however, hold to the contrary, in keeping with the concern of the United States Supreme Court . . . that there be a sufficient showing that the parties focused and agreed upon the issue. For example, several federal circuit courts hold that the incorporation of NASD rules is insufficient to show a clear and unmistakable agreement to have arbitrators decide their own jurisdiction. [Citations.]

"In our view, while the incorporation of AAA rules into an agreement might be sufficient indication of the parties' intent in other contexts, we seriously question how it

provides *clear* and *unmistakable* evidence that [they] intended to submit the issue of the

unconscionability of the arbitration provision to the arbitrator, as opposed to the court.

There are many reasons for stating that the arbitration will proceed by particular rules,

and doing so does not indicate that the parties' motivation was to announce who would

decide threshold issues of enforceability.

"Moreover, the reference to AAA rules does not give an employee, confronted

with an agreement she is asked to sign in order to obtain or keep employment,[4] much of

a clue that she is giving up her usual right to have the court decide whether the arbitration

provision is enforceable. Assuming that [a party] reads the arbitration provision in the

proposed agreement, notes that disputes will be resolved by arbitration according to AAA

rules, and even has the wherewithal and diligence to track down those rules, examine

them, and focus on the particular rule . . . , the rule merely states that the arbitrator shall

have 'the power' to determine issues of its own jurisdiction, including the existence,

scope and validity of the arbitration agreement. This tells the reader almost nothing,

since a court *also* has power to decide such issues, and nothing in the AAA rules states

that the AAA arbitrator, as opposed to the court, *shall* determine those threshold issues,

or has *exclusive* authority to do so, particularly if litigation has already been commenced.

"Again, we must be mindful of what the United States Supreme Court has

emphasized unflinchingly for decades: notwithstanding the public policy favoring

---

**4**      While *Ajamian* happened to involve an employer-employee contract, in our view identical considerations apply to the school-student contract here.

13

arbitration, arbitration can be imposed only as to issues the parties agreed to arbitrate; given the slim likelihood that the parties actually contemplated who would determine threshold enforceability issues, as well as the default presumption that such issues would be determined by the court, those threshold issues must be decided by the court absent *clear and unmistakable* proof to the contrary. . . . '[I]t is not enough that ordinary rules of contract interpretation simply yield the result that arbitrators have power to decide their own jurisdiction.  Rather, the result must be clear and unmistakable, because the law is solicitous of the parties actually *focusing* on the issue.  Hence silence or ambiguity is not enough.'" (*Ajamian v. CantorCO2e, L.P.*, *supra*, 203 Cal.App.4th at pp. 789-791.)

As defendants note, *Ajamian* ultimately declined to decide whether incorporation of the AAA rules would be a sufficiently clear and unmistakable manifestation of intent. (*Ajamian v. CantorCO2e, L.P.*, *supra*, 203 Cal.App.4th at p. 791.)  Rather, it held that "the reference to AAA rules . . . was insufficient for another reason:  the [underlying agreement] did not mandate that AAA rules would *necessarily* apply.  Instead, the arbitration clause stated that the arbitration would be held according to NASD rules, AAA rules, *or* the rules of 'any other alternative dispute resolution organization' . . . ." (*Ibid.*)  Thus, when the plaintiff signed the agreement, she had no way of knowing what rules would apply.  (*Ibid.*)

While we recognize that *Ajamian* side-stepped the issue, we find its discussion compelling.  As it noted, the AAA rules give the arbitrator the "power" to rule on objections to the validity of the arbitration agreement.  However, they do not provide that

14

the arbitrator's power in this respect is exclusive. In other words, they permit, but they do not require the arbitrator to rule on objections to the validity of the arbitration agreement. At most, incorporating the AAA rules creates an "ambiguity" as to the "rather arcane" question of who should decide arbitrability; the United States Supreme Court has held that this is insufficient to overcome the presumption that arbitrability is an issue for judicial determination. (*First Options of Chicago, Inc. v. Kaplan*, *supra*, 514 U.S. at p. 945.)

We therefore conclude that the trial court did not err by proceeding to decide the issue of unconscionability.

IV

UNCONSCIONABILITY

Defendants also contend that the trial court erred by ruling that the arbitration agreement was unconscionable.

"An agreement to arbitrate, like any other contract, is subject to revocation if the agreement is unconscionable. [Citation.]" (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 83.) However, in assessing unconscionability, we must focus solely on the arbitration provisions, rather than on the Enrollment Agreement as a whole. Under federal law, "courts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself, [citation], or claims that the agreement to arbitrate was '[n]ever concluded,' [citations]."

15

(*Granite Rock Co. v. International Broth. of Teamsters* (2010) 561 U.S. 287, 301.)

California law is in accord. (*Bruni v. Didion*, *supra*, 160 Cal.App.4th at p. 1285.)

"Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."' [Citation.]

" . . . Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on '"a sliding scale."' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, *supra*, 55 Cal.4th at pp. 246-247.) "The party resisting arbitration bears the burden of proving unconscionability. [Citations.]" (*Id.* at p. 247.)

A.    *Procedural Unconscionability*.

"As indicated, procedural unconscionability requires oppression or surprise. '"Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix

printed form."' [Citation.]" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, *supra*, 55 Cal.4th at p. 247.)

Here, there was evidence of oppression; the arbitration provisions were part of a preprinted form, presented on a take-it-or-leave-it basis. However, this "only show[s] a low level of procedural unconscionability because . . . the elements of surprise or, a fortiori, misrepresentation [citation] were not present." (*Woodside Homes of Cal., Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 730 [Fourth Dist., Div. Two].)

As preprinted forms go, the Enrollment Agreement was neither the best nor the worst we have seen. It totaled 11 pages. It used typefaces considerably smaller than in an ordinary book or magazine. The arbitration provisions did not particularly stand out; they were not in bold or capitals. Eakins had to initial the arbitration provision — but then, she had to initial *every* applicable provision of the Addendum.

At the same time, however, Eakins did not testify that she did not read or was not aware of the arbitration provisions. (Cf. *Bruni v. Didion*, *supra*, 160 Cal.App.4th at p. 1291 ["[F]ailure to read the contract helps 'establish actual surprise . . . .' [Citation.]"].)[5] The fact that she initialed the applicable paragraph of the Addendum was evidence that she *did* read the arbitration provisions. Inasmuch as she had the burden of

---

[5]     In her appellate brief, Eakins asserts that "she did not read the arbitrability clause." However, this appears to refer to the provision of the Consumer Rules giving the arbitrator the power to rule on the existence, scope or validity of the arbitration agreement; it does not appear to refer to the Enrollment Agreement itself. In any case, the assertion is not cited to any evidence in the record.

17

proving unconscionability, we can only conclude that the arbitration provisions did not come as a surprise.

The only even arguable surprise was as to the content of the Consumer Rules. Certainly there is no shortage of California cases holding that the failure to attach a copy of the applicable arbitration rules is a factor pointing toward unconscionability. (*Carmona v. Lincoln Millennium Car Wash, Inc.*, *supra*, 226 Cal.App.4th at pp. 84-85 [Second Dist., Div. Eight]; *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1146 [First Dist., Div. Three]; *Ajamian v. CantorCO2e, L.P.*, *supra*, 203 Cal.App.4th at p. 797 [First Dist., Div. Five]; *Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 485-486 [Sixth Dist.]; *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393 [First Dist., Div. Four]; *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1516 [Second Dist., Div. Five]; *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406-1407 [Fourth Dist., Div. Three].)

In more recent cases, however, there is a discernable trend toward analyzing the failure to provide a copy of applicable arbitration rules on a more fact-sensitive, case-by-case basis. (See *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 690-691 [Second Dist., Div. Four]; *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1470-1472 [First Dist., Div. One]; see also *Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 737 [Sixth Dist.].) Thus, for example, the fact that the rules are accessible, on the Internet or otherwise, cuts against unconscionability. (*Lane v. Francis Capital Management LLC*, *supra*, 224 Cal.App.4th at p. 691.) It likewise cuts against

unconscionability that the rules themselves are fair. (*Peng v. First Republic Bank*, *supra*, 219 Cal.App.4th at p. 1472.)

We disagree with the trial court that there was any uncertainty as to what was the AAA's "Consumer Rules" referred to. "The general rule is that the terms of an extrinsic document may be incorporated by reference in a contract so long as (1) the reference is clear and unequivocal, (2) the reference is called to the attention of the other party and he consents thereto, and (3) the terms of the incorporated document are known or easily available to the contracting parties. [Citations.]" (*DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697, 713.)

Eakins made much of the fact that an AAA representative (mis)informed her counsel that there was no such thing as AAA Consumer Rules. However, the same representative, in the same phone call, guided her counsel to the Commercial Rules, which in turn guided him to the Supplementary Procedures. These, taken together, constituted the AAA's Consumer Rules.[6]

Eakins could have obtained a copy of the Consumer Rules simply by asking for them. Indeed, even after she signed the Enrollment Agreement, she could still have asked for a copy of the rules; then, if they were disagreeable, she could have canceled the Enrollment Agreement at any time within seven days after signing it. Eakins suggests that a student who asked for a copy of the rules might be viewed as litigious and

---

[6]     Eakins's counsel claims "[i]t is still unclear" what the "Consumer Rules" actually are. This is somewhat disingenuous.

19

subjected to intimidation.  However, there is no *evidence* of this.  Eakins did not testify that this was why *she* did not ask for a copy of the rules.  Most important, this assumes the student waits until a dispute has arisen before asking for a copy of the rules.  If a student asks for a copy of the rules at or near the time of signing the contract, these fears would seem groundless.  In any event, Eakins also could have obtained a copy via the Internet.

Eakins argues that the Consumer Rules were unfair in certain respects.  We will discuss these arguments as a matter of substantive unconscionability below.  For now, we conclude that Eakins has shown only minimal procedural unconscionability.

B.　　*Substantive Unconscionability*.

Eakins argues that three aspects of the Consumer Rules — and hence the arbitration provisions incorporating them — were substantively unconscionable:  (1) Rule R-7, giving the arbitrator the power to rule on the existence, scope or validity of the arbitration agreement; (2) Rule R-21, limiting discovery; and (3) Rule R-10, letting the arbitrator set the place of the hearing.  Eakins additionally argues that the attorney fee provision of the Enrollment Agreement was substantively unconscionable.[7]

---

[7]　　The attorney fee provision was contained in a very broad release of claims.  Eakins, however, does not argue that the release of claims itself is unconscionable or even relevant.

20

1. *The delegation provision.*

As we already held in part III, *ante*, Rule R-7 merely allows the arbitrator to reach arbitrability issues in an appropriate case, when there is the necessary clear and unmistakable evidence that the parties actually agreed to have the arbitrator do so. Because there is no such evidence here, Eakins is not subject to this provision of the rules.

2. *Location-dependent expenses.*

Eakins argues that, if the arbitrator chooses an inconvenient location for the arbitration, she could incur costs greater than she would incur in a court proceeding. However, "[w]e assume that the arbitrator will operate in a reasonable manner in conformity with the law.  [Citations.]" (*Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 984.)  Thus, we must presume that the arbitrator will set the hearing in a reasonable and mutually convenient location.

3. *Limitations on discovery.*

In *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, the California Supreme Court held that an employee cannot be required to arbitrate statutory claims against an employer under the Fair Employment and Housing Act (FEHA) unless (among other things) the arbitration procedure provides for "adequate discovery." (*Id*. at pp. 104-106.)  The court further held, however, "that when parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures as are necessary to vindicate that claim.  [Citation.] . . .

21

[I]t is undisputed that some discovery is often necessary for vindicating a FEHA claim. Accordingly, . . . the employees in this case . . . are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) . . . ." (*Id*. at p. 106.) It concluded that "although the employees are correct that they are entitled to sufficient discovery as a means of vindicating their sexual discrimination claims, we hold that the employer, by agreeing to arbitrate the FEHA claim, has already impliedly consented to such discovery. Therefore, lack of discovery is not grounds for holding a FEHA claim inarbitrable." (*Ibid*.)

We may assume that Eakins's claims arising under antidiscrimination statutes similar to FEHA are similarly nonwaivable. (See Civ. Code, § 3513 ["a law established for a public reason cannot be contravened by a private agreement."].) But if so, then the Enrollment Agreement must be similarly construed as including an implicit agreement to provide sufficient discovery, even in an arbitration. Rule R-21 gives the arbitrator the power to direct "the production of documents and other information . . . ." Thus, "the absence of express provisions . . . allowing discovery does not render the arbitration agreement unconscionable. Rather, those terms are implied as a matter of law as part of the agreement. [Citation.]" (*Sanchez v. Western Pizza Enterprises, Inc.* (2009) 172 Cal.App.4th 154, 177; accord, *Lane v. Francis Capital Management LLC*, *supra*, 224 Cal.App.4th at p. 693.)

22

4.    *Fee-shifting.*

Defendants argue that the trial court erred by even considering whether the attorney fee provision was unconscionable, because it was severable from the arbitration agreement itself.  We agree.

As already mentioned, under the doctrine of severability, "if the party resisting arbitration is claiming that the arbitration clause itself is unconscionable, a court must decide this claim.  [Citations.]  However, provided the court concludes that the arbitration clause itself is not unconscionable, it must compel arbitration, leaving it up to the arbitrator to determine whether the contract as a whole is unconscionable.  [Citation.]" (*Bruni v. Didion*, *supra*, 160 Cal.App.4th at p. 1290.)

Here, even assuming the attorney fee provision was, in fact, unconscionable, that would not detract from the validity or enforceability of the arbitration provisions.  Under similar circumstances, federal appellate courts have held that it is up to the arbitrator to decide whether an attorney fee provision is unconscionable.  (*Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A.* (8th Cir. 2003) 334 F.3d 721, 726-728; *Boomer v. AT&T Corp.* (7th Cir. 2002) 309 F.3d 404, 418, fn. 6; *Thompson v. Irwin Home Equity Corp.* (1st Cir. 2002) 300 F.3d 88, 91-92.)

We recognize that some California appellate courts have refused to compel arbitration because the agreement between the parties included an unconscionable attorney fee provision; in each of these cases, however, the court also found additional unconscionable provisions, and it determined that the unconscionable provisions could

23

not be severed. (*Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at pp. 103-104, 120-127; *Carmona v. Lincoln Millennium Car Wash, Inc.*, *supra*, 226 Cal.App.4th at pp. 88-90; *Samaniego v. Empire Today, LLC*, *supra*, 205 Cal.App.4th at pp. 1147, 1149; *Ajamian v. CantorCO2e, L.P.*, *supra*, 203 Cal.App.4th at pp. 799-800, 802-804; *Pinedo v. Premium Tobacco Stores, Inc.* (2000) 85 Cal.App.4th 774, 780-781.) In this case, by contrast, the only even arguably unconscionable provision is the attorney fee provision,[8] and it can readily be severed from the arbitration provisions. (Cf. *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 709-710 [compelling arbitration after severing unconscionable attorney fee provision].)

We therefore conclude that the arbitration provisions themselves were not substantively unconscionable.

V

DISPOSITION

Eakins has never disputed that, if Corinthian is entitled to compel arbitration, then the other defendants are likewise entitled to compel arbitration. (See generally *Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 837-840 [some nonparties, including agents and third-party beneficiaries, can enforce arbitration agreement].)

---

[8]    We emphasize that we are not deciding whether the attorney fee provision is, in fact, unconscionable.

24

Thus, the order denying the petition to compel arbitration is reversed.  The matter is remanded with directions to enter an appropriate order granting the petition to compel arbitration.  Defendants are awarded costs on appeal against Eakins.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAMIREZ
P. J.

We concur:


HOLLENHORST
J.


MILLER
J.